No. 62,217

STATE OF KANSAS, *Appellee*, v. CURTIS L. DOILE, *Appellant.*

(769 P.2d 666)

Opinion filed March 3, 1989.

*John J. Ambrosio*, of John J. Ambrosio, Chartered, of Topeka, argued the cause, and *John C. Humpage*, of Topeka, was with him on the brief for appellant.

*Rodney H. Symmonds*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: Curtis L. Doile appeals his bench trial convictions of driving with a suspended license (K.S.A. 1988 Supp. 8-262), possession of drug paraphernalia (K.S.A. 65-4152), possession of tetrahydrocannabinols (K.S.A. 1988 Supp. 65-4127b[a][3] and 65-4105[d]); and two counts of possession of cocaine (K.S.A. 1988 Supp. 65-4127a). Five issues are raised on appeal. Four issues relate to the propriety of the searches and seizures herein. The final issue is a claim that the sentences imposed are excessive.

On February 6, 1987, at approximately 2:15 a.m., Officer Willie Turner and Lieutenant Rex Heinitz of the Emporia Police Department were dispatched to the Kona-Coast Club in Emporia to investigate a fight. After resolving the fight incident, the officers returned to the parking lot of the private club.

In the parking lot, Officer Turner observed Curtis Doile, defendant herein, and a woman get out of a van in the parking lot, walk to a car immediately in front of the van, open the car door, shut it, and then go inside the Kona-Coast Club. When Doile opened the car door, he bent down and appeared to be placing something in the car. Doile was known to Officer Turner and he knew the car belonged to Doile. Officer Turner discussed the matter with Lt. Heinitz and told him he wanted to make a visual observation of the car from the outside through the windows.

Officer Turner thereupon walked over to Doile's car and shined his flashlight into the interior. Turner observed what he believed to be a partially burned hand-rolled marijuana cigarette lying on the console next to the gearshift. He returned to Lt. Heinitz and discussed the matter with him. They decided to wait and watch the vehicle. They took up different observation points—Lt. Heinitz on Highway 50, directly across from the

club, and Officer Turner on West 12th Avenue. About 15 minutes later, Officer Turner observed an individual leave the Kona-Coast Club, get into Doile's car, and drive out of the parking lot onto 12th Avenue. He could not recognize the individual from his vantage point. Officer Turner followed the defendant's car, turned on his vehicle's overhead rotating red lights, and stopped the car. He approached the car, observed that the driver was Curtis Doile, and asked him to get out of the vehicle. He frisked Doile for weapons and found none. He asked Doile for his driver's license and was told Doile did not have one because his license had been suspended. By this time Lt. Heinitz had arrived. Turner smelled alcohol on Doile's breath. He asked Doile if he would be willing to take some sobriety tests. Doile agreed. Following the tests, Doile was arrested, handcuffed, and put in Turner's police vehicle. Turner later testified he arrested Doile for possession of marijuana, DUI, and driving with a suspended license.

Turner returned to Doile's automobile, where he observed the hand-rolled marijuana cigarette in the same place it was when he had first seen it in the Kona-Coast Club parking lot. Turner then searched the vehicle. He discovered a mirror, with an image of a horse on it, in the glove compartment and a brown paper sack behind the front seat on the floorboards. In the paper sack was a "baggie" containing green vegetation Turner thought was marijuana. Turner then returned to his vehicle, advised Doile of his *Miranda* rights, and transported him to the Lyon County Jail.

At the jail, defendant placed his personal effects in a tray. One of the items placed thereon was a billfold. Inside the billfold was a straw. During the booking-in process, Doile was observed putting something in his mouth. After being told to spit out what was in his mouth, Doile refused. Police forced Doile to expel the item from his mouth. The item was a drinking straw. Officer Turner secured the straw, which contained a white substance. The straw from the billfold was missing. Both the billfold and straw were found to contain traces of cocaine.

As a result of the foregoing events, defendant was charged in case No. 87-CR-60 with: (1) driving under the influence, (2) possession of tetrahydrocannabinols, (3) possession of drug paraphernalia, (4) driving with a suspended license, and (5) possession of cocaine.

Officers then obtained a search warrant for the search of defendant's residence at 706 West Fourth Avenue in Emporia. While executing the search warrant, nineteen items were seized, including a bag of green vegetation, an inhaler bottle with some white powder in it, a green sifter, a plastic bag containing white powder, two silver-grey zipper pouches, a black plastic container, a small black pouch containing two razor blades, and a metal straw and spoon.

KBI testing obtained cocaine-positive results on the billfold, straw, and mirror (items seized at time of arrest), and the inhaler bottle, black plastic container, and green sifter (items seized at the residence). The cigarette and the bag of green vegetation taken from the car tested positive for marijuana.

Defendant was charged in case No. 87-CR-194 with possession of cocaine, possession of tetrahydrocannabinols, and possession of drug paraphernalia. These charges arose from the items seized at defendant's residence. The cases were consolidated for a bench trial. Defendant's motions to suppress all seized items were denied.

Defendant was convicted in the bench trial of the following crimes:

Case No. 87-CR-60:

1. Possession of tetrahydrocannabinols (marijuana);
2. possession of drug paraphernalia;
3. driving with a suspended license; and
4. possession of cocaine (a class B felony due to a previous conviction).

Case No. 87-CR-194:

1. Possession of cocaine (a class B felony due to a previous conviction).

All sentences herein run concurrent with each other. The controlling term is not less than 10 years nor more than 30 years (the sentence received on each of the two cocaine convictions).

### Case No. 87-CR-60

We turn now to the issues. The first two issues arise from case No. 87-CR-60 and involve the search and seizure of items from defendant's automobile and his person. For his first point, defendant contends the shining of the flashlight by the police officer into defendant's car while it was parked in the Kona-Coast Club's parking lot was an unreasonable search not justified by

exceptions to the Fourth Amendment to the United States Constitution.

Defendant contends that the parking lot of the Kona-Coast Club was a private area and the officer had no lawful right to shine his flashlight into defendant's automobile. The officer did not open a car door, physically intrude into the vehicle, or remove anything from the vehicle while it was in the parking lot. The officer's curiosity was aroused when he saw Doile put something into the car, and the officer walked over and flashed his light into the vehicle. There he saw what he believed was a marijuana cigarette on the vehicle's console.

Was this a search? We believe not. The officers were in the parking lot on official business—to quell a fight reported in the club. The parking lot was open to those with business in the club. Doile and the officers were in that category. This is not the same situation as looking into a vehicle parked in the owner's garage. It is difficult to see what expectation of privacy for his vehicle Doile could have in these circumstances.

Defendant argues the officer's actions constituted a search and would be justified only if the plain view doctrine or *Ross* exception applied.

It is well established that under certain circumstances the police may seize evidence in plain view. In *Coolidge v. New Hampshire*, 403 U.S. 443, 467-71, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh. denied* 404 U.S. 874 (1971), the United States Supreme Court set out the circumstances in which plain view has legal significance. The test is threefold: (1) The initial intrusion which afforded the authorities the plain view was lawful by virtue of a warrant (search or arrest), waiver, or exigent circumstances; (2) the discovery of the evidence was inadvertent; and (3) the authorities immediately had reasonable or probable cause to believe the evidence observed in plain view was incriminating in nature.

In *State v. Galloway*, 232 Kan. 87, 652 P.2d 673 (1982), we adopted the "plain view" exception to the Fourth Amendment as enunciated in *Coolidge v. New Hampshire*, 403 U.S. 443.

In *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), the United States Supreme Court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed

somewhere within may conduct a warrantless search of the vehicle, including compartments and containers within the vehicle whose contents are not in plain view.

However, the use of a flashlight by a police officer lawfully on the premises to view the interior of an automobile does not by itself raise the activity to the level of a search.

In *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983), a "plain view" case, a police officer, assisting at a routine nighttime driver's license checkpoint in Fort Worth, Texas, asked a driver for his driver's license. At the same time, the officer shined his flashlight into the car and saw the driver drop a knotted balloon onto the seat beside his leg. When the driver opened the glove compartment to get his license, the officer noticed several plastic vials, quantities of white powder, and an open bag of party balloons. On appeal, the United States Supreme Court upheld the use of the flashlight, stating:

"It is likewise beyond dispute that Maples' action in shining his flashlight to illuminate the interior of Brown's car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States v. Lee*, 274 U.S. 559, 563 (1927): '[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution.' Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." 460 U.S. at 739-40.

See Annot., 89 L. Ed. 2d 939.

In *State v. Blood*, 190 Kan. 812, 378 P.2d 548 (1963), suspects in a case involving the theft of blank checks and the contents of the cash register from a service station were asked to return to the crime scene in their automobile. Returning to the service station, they parked partially on the shoulder of the highway leading to the service station. A state trooper dispatched to the scene looked into the parked automobile with a flashlight and saw several credit cards and a green metal box inside. Both occupants of the car denied knowledge of the items. They were thereafter arrested. Blood's counsel moved to suppress the evidence and was overruled. On appeal, we affirmed. Justice Schroeder, writing for a unanimous court, reasoned:

"It has been held that the eye cannot commit a trespass condemned by the Fourth Amendment. (See, *McDonald v. United States* [1948], 335 U.S. 451, 93 L. Ed. 153, 69 S. Ct. 191.) Observation of that which is in plain view is not a search. (*State v. Campbell* [Mo. 1953], 262 S.W.2d 5; *State v. Hawkins* [1951], 362 Mo.

152, 240 S.W.2d 688; and *State v. Harre* [Mo. 1955], 280 S.W.2d 41.)" 190 Kan. at 819.

In *State v. McMillin*, 206 Kan. 3, 476 P.2d 612 (1970), we said:

"A search implies prying into hidden places for that which is concealed and it is not a search to observe that which is in open view. Looking into a parked car through the windows does not constitute a search, even though it is nighttime and the items can be seen only with the aid of a flashlight [Citation omitted.]." 206 Kan. at 7-8.

We find no basis for holding the district court erred or abused its discretion relative to the officer looking through the vehicle's window while it was parked in the parking lot.

The next point relative to case No. 87-CR-60 is whether the district court erred in not holding the stop, search, and seizure of items from defendant's vehicle were impermissible.

The appellate standard of review is clear. If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence, this court in review will not substitute its view of the evidence for that of the trial court. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979); *State v. Kirby*, 12 Kan. App. 2d 346, Syl. ¶ 5, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988).

K.S.A. 22-2402(1) provides:

"Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions."

The officer making the stop must be able to articulate the basis for his reasonable suspicions. See *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 99 S. Ct. 2637 (1979), and *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). What is reasonable is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement. *United States v. Cortez*, 449 U.S. 411, 417-18, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981).

A few minutes prior to the stop, the officer had observed what he believed was a marijuana cigarette on the vehicle's console. Defendant was the only person to enter the vehicle thereafter. When defendant drove away the officer had probable cause to believe contraband was in the vehicle in defendant's possession. He stopped the car. He asked defendant for his driver's license and was told the license had been suspended. Based on his

observations of defendant, he believed defendant was driving under the influence of alcohol. Defendant told the officer he had consumed a few drinks that evening. Defendant failed the field sobriety tests administered. Defendant was at that point arrested and placed in the patrol car. The officer returned to defendant's automobile and saw the marijuana cigarette still in place on the console. The vehicle was searched and what was believed to be contraband was found in the glove compartment and on the floor of the back seat. Additional contraband was found on defendant's person when he was booked into jail.

Defendant's position is that the initial flashlight observation at the parking lot was improper and could not serve as probable cause for stopping the vehicle. We have previously concluded that the observation of the contraband in the parking lot was not impermissible. Therefore, the officer had probable cause to stop the vehicle. Defendant does not contend the subsequent searches and seizures from the vehicle and defendant's person were improper on any other grounds. We find no error or abuse of discretion in the trial court's refusal to suppress the items seized from defendant's automobile and his person.

### Case No. 87-CR-194

We turn now to the search and seizures issues arising from case No. 87-CR-194. Defendant first argues that the affidavit filed to obtain the search warrant for his residence was insufficient to support a finding of probable cause.

In *State v. Abu-Isba*, 235 Kan. 851, 685 P.2d 856 (1984), we adopted the "totality of the circumstances" approach set forth in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 (1983), relative to the issuance of search warrants, wherein we held:

"Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The complaint and supporting affidavits should supply the magistrate with sufficient factual information to support an independent judgment that probable cause to arrest exists." Syl. ¶ 1.

"In determining whether to issue a warrant for arrest or search a magistrate should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that a crime has been committed and the defendant committed the crime, or that contraband or evidence of a crime will be found in a particular place." Syl. ¶ 2.

"On appeal, the duty of the reviewing court is simply to ensure that the

magistrate had a substantial basis for concluding that probable cause existed." Syl. ¶ 3.

The affidavit set forth the viewing of the marijuana cigarette in defendant's automobile in the parking lot, and the events of the stopping of the vehicle and the seizure of the mirror, the partially burned marijuana cigarette, and a baggie of marijuana. It further recited the seizure of the straw in which white powder residue was discovered. The affidavit further stated defendant had been convicted of selling cocaine in 1983, the sales having occurred in 1982. Based on this information, the officers sought a search warrant of defendant's residence.

In *State v. Morgan*, 222 Kan. 149, 153, 563 P.2d 1056 (1977), we said:

> "Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating protracted or continuous conduct at a particular location and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist."

Defendant had a straw containing traces of a white powder, which he tried to dispose of after arrest. He had a partially burned marijuana cigarette, a mirror, and a baggie of marijuana in his car. Almost five years previously, he had sold cocaine. No facts were alleged indicating any current drug-related activity was occurring at the residence. Do these facts warrant a finding of probable cause to believe defendant's residence contained marijuana, drug paraphernalia, and cocaine? We believe not.

Having concluded that no probable cause existed for the issuance of the search warrant, we come to the question of whether the cocaine seized at the residence should have been suppressed (other items seized are not involved in this appeal). For this determination we must consider *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984).

In *Leon* the court traces the history and purpose of the exclusionary rule. Highly summarized, the exclusion of evidence which the police have unlawfully obtained is a penalty aimed at the police and is imposed to deter future wrongful conduct. A strong theme running throughout *Leon* is that evidence seized under a search warrant subsequently held to be invalid is not to be suppressed absent some chicanery or wrongdoing by the police. *Leon* refers to this as the good faith exception to the

exclusionary rule. This is somewhat of a misnomer, as the opinion makes it clear that such evidence is not to be excluded unless bad faith is shown. As *Leon* states: "We . . . conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." 468 U.S. at 918.

Hence, *Leon* states that the evidence so seized is not to be excluded unless it is shown: (1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. *United States v. Leon*, 468 U.S. at 923.

None of the exceptions so stated are applicable herein. The affidavit contained no false or misleading statements. No pertinent information was withheld from the affidavit. There is no evidence the issuing judge "wholly abandoned his . . . neutral and detached role." The warrant was not lacking in specificity. There are no circumstances where it was unreasonable for the officer executing the warrant not to override the determination of probable cause found by the issuing district judge and refuse to execute the warrant. There simply is no bad faith or wrongdoing shown in the issuance or execution of the warrant. Normally, this determination would end the inquiry. However, *Leon* makes it clear that:

"reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.' *Illinois v. Gates*, 462 U.S., at 239. 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.' *Ibid.* See *Aguilar v. Texas*, [378 U.S. 108] at 114-115; *Giordenello v. United States*, 357 U.S. 480 (1958); *Nathanson v. United States*, 290 U.S. 41 (1933). Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, *Illinois v. Gates, supra*, at 238-239, or because the form of the warrant was improper in some respect." 468 U.S. at 915.

The affidavit herein does not contain any factual allegations from which the judge could have found there was probable cause to believe contraband was in the residence. There was no allegation of any drug-related activity at the residence except for the sales almost five years earlier. There was nothing about the items seized from the vehicle or person from which one could conclude they were part of a stash at the residence. The judge must have concluded that finding the small amount of drugs on the defendant's person and in his auto was probable cause to search his residence simply because of the old conviction. This is an "improper analysis of the totality of the circumstances" within the purview of *Leon*, and we, as a reviewing court, need not defer to the issuing judge's determination. We should, perhaps, note that the judge issuing the warrant was the same judge who denied the suppression motion, so this is the first "outside" review of the matter.

We conclude that, under the totality of the circumstances, the trial court erred in refusing to suppress the cocaine seized at the residence. The defendant's conviction for possession of cocaine in case No. 87-CR-194 must be reversed.

For his final issue, defendant contends the trial court erred in denying his motion to modify the sentences imposed herein. The controlling term is 10 to 30 years. The reversal of the cocaine conviction in case No. 87-CR-194 does not reduce the figure, as like terms were imposed on both cocaine convictions and all sentences were run concurrently.

The sentences imposed were within the statutory limits for the offenses. Defendant does not contend the trial court failed to consider and apply the sentencing criteria set forth in K.S.A. 21-4606. Defendant argues that his prior criminal record and his current convictions were such that a lesser sentence was warranted.

The penalty for a second conviction of possession of cocaine under K.S.A. 1988 Supp. 65-4127a is that of a class B felony—a minimum of 5 to 15 years and a maximum of 20 years to life. Defendant received a sentence of 10 to 30 years. A sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression,

or corrupt motive. *State v. McGlothlin,* 242 Kan. 437, 438, 747 P.2d 1335 (1988); *State v. Jennings,* 240 Kan. 377, Syl. ¶ 2, 729 P.2d 454 (1986); *State v. Van Cleave,* 239 Kan. 117, Syl. ¶ 5, 716 P.2d 580 (1986). There is no allegation of partiality, prejudice, oppression, or corrupt motive. We find no abuse of discretion in the sentences imposed.

The convictions in case No. 87-CR-60 are affirmed. The conviction in case No. 87-CR-194 is reversed.

LOCKETT, J., concurring: The majority correctly states that under *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct 3405, *reh. denied* 468 U.S. 1250 (1984), evidence seized pursuant to a search warrant may not be excluded unless it is shown that: (1) The judge or magistrate who issued the warrant was deliberately misled by false information; (2) the judge or magistrate wholly abandoned his or her neutral and detached role; (3) the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) there was so little indicia of probable cause contained in the warrant it was entirely unreasonable for an officer to believe the warrant valid. I concur with the majority's finding that no probable cause existed for the issuance of the search warrant and that the evidence seized in the residence should have been suppressed. Because I cannot agree with the majority's conclusion that "[n]one of the exceptions so stated [in *Leon*] are applicable herein," I cannot join the majority's creation of the "bare bones" affidavit exception.

Here, the evidence seized should be excluded for two reasons stated in *Leon*. First, the officers knew that the facts supporting probable cause for searching the residence referred to acts which occurred five years earlier. Any reasonable officer would realize that a seizure of drugs in a residence five years prior to the alleged crime would not support probable cause to believe that drugs would now be found in that residence. Therefore, since the warrant was lacking in indicia of probable cause, it was unreasonable for the officers to have believed that the warrant was valid.

Second, and more importantly, the evidence could have been excluded due to the fact that the magistrate wholly abandoned his neutral and detached role. The majority has misconceived the magistrate's role in determining if the affidavit contains

sufficient information for probable cause to issue the search warrant under *Leon*. The majority implies that a magistrate only abandons his or her neutral and detached role when the magistrate acts in bad faith, for example, by actively assisting the officers in establishing probable cause to issue the warrant or in executing the search warrant. This reasoning ignores the Supreme Court's requirement in *Leon* that the magistrate reviewing the application for a search warrant conscientiously exercise judicial reasoning when determining if there is probable cause to issue the warrant.

As early as 1933, the United States Supreme Court stated that the Fourth Amendment prohibits a magistrate from issuing a warrant to search a private dwelling unless the magistrate could find probable cause from the facts and circumstances stated in the affidavit for the search warrant. *Nathanson v. United States*, 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933). Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his or her action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of the affidavit on which warrants are issued. *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 (1983).

Here, when examining the application and the affidavit for the search warrant, the judge abdicated his duty by failing to conscientiously exercise judicial reasoning and merely ratified the conclusion of the officers that there was probable cause to issue the search warrant. Since the judge wholly abandoned his neutral and detached role, the evidence seized at the residence must be suppressed under *Leon*. The Fourth Amendment protects us not only from judges and law enforcement officers who act in bad faith, but also from those who are unaware of the protections contained in that amendment.

HOLMES and ALLEGRUCCI, JJ., join in the foregoing concurring opinion.