No. 69,466

STATE OF KANSAS, *Appellant,* v. DAVID L. RATZLAFF, *Appellee.*
(877 P.2d 397)

Opinion filed July 8, 1994.

*Kevin C. Fletcher,* first assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the briefs for appellant.

*Kiehl Rathbun,* of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The defendant, David L. Ratzlaff, is charged with one count of possession of cocaine, K.S.A. 65-4127a; one count of possession of marijuana with intent to sell, K.S.A. 65-4127b; and one count of possession of marijuana without a tax stamp, K.S.A. 79-5208. The district court ruled that a search warrant which had been issued for David Ratzlaff's residence was not supported by probable cause and suppressed evidence seized during the search. The State appealed pursuant to K.S.A. 1992 Supp. 22-3601(a) and K.S.A. 22-3603. The Court of Appeals, in an unpublished opinion filed November 24, 1993, reversed and remanded for further proceedings. David Ratzlaff's petition for review was granted by this court.

Two issues are raised on appeal:

1. Was the information in the police affidavit supporting the application for a search warrant sufficient to form a substantial basis for concluding that probable cause existed?

2. If the court finds a lack of probable cause existed to support the issuance of the search warrant, does the good faith exception

to the exclusionary rule prevent the evidence seized from Ratzlaff's residence from being suppressed?

Based on an affidavit and application made by Detective Howard Shipley to Reno County District Court Judge Patricia Macke Dick, a search warrant was issued on May 17, 1992, for any buildings and vehicles located at 600 West 23rd in Hutchinson. David Ratzlaff resided at that address. During the search of Ratzlaff's residence, drugs, cash, and weapons were seized.

Upon Ratzlaff's motion, District Court Judge Steven R. Becker reviewed the affidavit and concluded in a memorandum opinion issued December 23, 1992, that "no probable cause existed for the issuance of the search warrant of [Ratzlaff's] residence." On February 19, 1993, the district court conducted an evidentiary hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), for the purpose of determining whether the evidence seized in the search of Ratzlaff's residence should be suppressed. In a memorandum opinion filed March 4, 1993, the district court found that the good faith exception to the exclusionary rule created by *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), was not applicable and ordered that the evidence be suppressed.

The affidavit contained the following information: Detective Shipley, on two previous occasions within two years, had received accurate information from a confidential informant about individuals involved in drug transactions. In April 1992, the informant told Detective Shipley about a large-scale marijuana and cocaine distribution operation in Hutchinson supplied by Leo Gutierrez and run by William R. Meyers and David Ratzlaff. The informant named several people who he said were provided cocaine by Meyers and Ratzlaff. He said that Ratzlaff lived on West 23rd Street, and Detective Shipley determined that Ratzlaff's residential address was 600 West 23rd Street in Hutchinson. The informant overheard conversations which indicated that Gutierrez would deliver a large quantity of cocaine to Meyers and Ratzlaff in Reno County by the weekend of May 15-17, 1992. On May 11, Detective Shipley saw three Hispanic males at Meyers' residence in South Hutchinson. Their vehicle was registered to Gutierrez. On

May 17, 1992, the informant contacted Detective Shipley and said that "Gutierrez was in Hutchinson and the deal was taking place." The informant said that Meyers sold marijuana he got from Gutierrez to James Roets. Detective Shipley saw Roets at Meyers' residence in South Hutchinson. Roets went from there to 2210 N. Obee Road, the residence of one of Meyers' customers, and then to another residence owned by Meyers, on Obee Road, where there was a pickup truck registered to Gutierrez. After leaving Hutchinson, the pickup was stopped with more than $32,000 cash in it.

The district court stated with regard to the affidavit that it contained general information from a confidential informant that Ratzlaff was supplied drugs by Gutierrez and engaged in drug trafficking, but was devoid "of any mention of activity by Ratzlaff or any suspicious activity occurring at his residence, while Leo Gutierrez was in Reno County." The district court formulated the issue as "whether the statements of Ratzlaff's involvement in the criminal activity is alone sufficient to support a search warrant of his residence." It concluded that "[t]he affidavit lacks information to establish a substantial basis for concluding probable cause to believe that evidence of the alleged drug transaction on May 17, 1992, would be located at [Ratzlaff's] residence."

Based on Detective Shipley's testimony at the February 1993 evidentiary hearing, the district court rejected applying the good faith exception to the exclusionary rule to the present case. According to the district court, that testimony "establishes that information relevant to [Ratzlaff] was even less than implied in the affidavit and, in some instances, completely contrary to the information provided to the issuing magistrate." The specific findings of fact and conclusions of law made by the district court following the hearing are as follows:

"In comparing and contrasting the search warrant affidavit with Detective Shipley's testimony, the Court makes certain findings:

"1. The affidavit submitted to the magistrate contained the following statement: 'On May 17, 1992, the confidential informant contacted me and stated that Leo Gutierrez was in Hutchinson and *the deal was taking place* (emphasis added).' Detective Shipley testified that the informant told him that the cocaine

had already been delivered several hours earlier, not currently as implied in the affidavit.

"2. The confidential informant told Detective Shipley the cocaine had been delivered to the residence at 604 Westridge, Hutchinson, one of the other residences sought to be searched. This information was intentionally omitted in the affidavit by Detective Shipley.

"3. The investigation leading to the application for search warrants included intensive and extensive surveillance on May 14, 15, and 17, 1992 of a number of locations, including this defendant's residence. Although the affidavit contains some of the results of that surveillance, it omits that surveillance on this defendant's residence on both days revealed absolutely no activity; nothing was observed at this defendant's residence either before or after the delivery of cocaine to 604 Westridge.

"4. Omitted from the affidavit was information provided to Detective Shipley from the confidential informant that the defendant was out of town for several days.

"5. Omitted from the affidavit was that during the phone call to Detective Shipley from the confidential informant, the informant stated that hours earlier the cocaine had been delivered to 604 Westridge and that the informant didn't know the current location of the drugs.

"Based upon these findings, the Court concludes:

"1. The affidavit deliberately infers that the cocaine brought to Hutchinson by Leo Gutierrez was delivered to this defendant when information and investigation indicated otherwise.

"2. That the omissions listed above, if included in the affidavit, would have nullified any finding of probable cause that this defendant or his residence was involved in the May 17, 1992, transaction with Leo Gutierrez.

"3. Neither the recent information from the informant nor the investigation by law enforcement the week preceding and up to the execution of the search warrant created reason to believe this defendant possessed cocaine.

"4. Notwithstanding the investigation and surveillance by numerous law enforcement officers, the single base accusation by the confidential informant that this defendant was involved in the large-scale drug traffic scheme remained uncorroborated.

"5. Based upon the information available to Detective Shipley and Detective Shipley's knowledge, 'no reasonable well-trained officer should have relied upon the warrant' for this defendant's residence and Detective Shipley 'did not manifest objective good faith by relying on the warrant for this defendant's residence based on an affidavit so lacking in indicia of probative cause as to render official belief in its existence unreasonable.' (*United States v. Leon*, supra, syllabus #20)."

In the Court of Appeals, the State cited instances of Detective Shipley's hearing testimony where he generally denied either intentionally misleading or withholding information from the issuing

judge. The State, however, did not raise specific objections to the district court's findings of fact or correlate hearing testimony with those findings in an effort to show that they were incorrect or contrary to the testimony. With respect to the hearing testimony, the Court of Appeals simply restated some of the district court's findings of fact:

"The district court found, based in part on Shipley's testimony at this hearing, that Shipley had included inaccuracies and omitted material facts from the affidavit. . . .

. . . .

". . . [T]he [district] court found that Shipley intentionally omitted evidence that the drugs had not been delivered to Ratzlaff's address and that he was out of town during the relevant time periods. In addition, police surveillance indicated that there was absolutely no activity at Ratzlaff's residence."

Rather than taking issue with these findings, the Court of Appeals indicated that it viewed the facts in a different light and therefore reached a different legal conclusion. In such circumstances, however, the findings of fact of the district court control and should be accepted as the basis upon which the district court's suppression of the evidence is reviewed. In *Palmer v. State*, 10 Kan. App. 2d 656, 657-58, 707 P.2d 1091, *rev. denied* 238 Kan. 878 (1985), it was stated:

"Trial court determinations of fact, unappealed from, are final and conclusive. *In re Reed*, 8 Kan. App. 2d 602, 604, 663 P.2d 675 (1983). Although not strictly required, we have also reviewed the record below and we are additionally persuaded that the questioned fact findings of the trial court are amply supported by substantial competent evidence."

In the present case, too, review of the transcript of Detective Shipley's hearing testimony confirms that there is substantial competent evidence supporting the district court's findings of fact. Thus, we apply the reasonableness litmus test to the district court's findings of fact.

The rationale of the Court of Appeals in reversing the district court's ruling may be summarized as follows: It was reasonable, based on the evidence in Detective Shipley's affidavit, to conclude that there was probable cause to issue a search warrant. Hence, a reasonable, well-trained officer might have relied on the warrant.

We first consider if Detective Shipley's affidavit was sufficient to establish probable cause to issue the search warrant. Since the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), abandoned the *Spinelli/ Aguilar* "two-pronged test" for evaluating the validity of a warrant based on hearsay in favor of a "totality of the circumstances" approach, this court has approved the change. *State v. Walter*, 234 Kan. 78, 81, 670 P.2d 1354 (1983); see *State v. Abu-Isba*, 235 Kan. 851, 854, 685 P.2d 856 (1984).

"Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The complaint and supporting affidavits should supply the magistrate with sufficient factual information to support an independent judgment that probable cause to arrest exists."

"In determining whether to issue a warrant for arrest or search a magistrate should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that a crime has been committed and the defendant committed the crime, or that contraband or evidence of a crime will be found in a particular place." 235 Kan. 851, Syl. ¶¶ 1, 2.

In addition, this court quoted the United States Supreme Court's opinion in *Illinois v. Gates* for the direction that the circumstances to be considered include " 'the "veracity" and "basis of knowledge" of persons supplying hearsay information.' " 235 Kan. at 854 (quoting 462 U.S. at 238).

In *Illinois v. Gates*, the Supreme Court also stated: "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' [Citation omitted.]" 462 U.S. at 236. In this case, the two courts which previously reviewed the matter reached opposite conclusions. The district court decided that the informant's statements of Ratzlaff's involvement in the criminal activity did not constitute a substantial basis for the judge's concluding that probable cause existed for issuance of the search warrant of his residence. The Court of Appeals, on the other hand, decided that they did.

In *State v. Mayberry*, 248 Kan. 369, 377-78, 807 P.2d 86 (1991), the court made the following observations on the standard of probable cause:

"Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. It does not require evidence of each element of the crime or evidence to the degree necessary to prove guilt beyond a reasonable doubt. *State v. Abu-Isba*, 235 Kan. 851, 853-54, 685 P.2d 856 (1984). See *State v. Dunn*, 233 Kan. at 414-15; *State v. Lamb*, 209 Kan. 453, 467, 497 P.2d 275 (1972), *rev'd in part on other grounds* 225 Kan. 38, 587 P.2d 861 (1978). Probable cause has been described as " '[b]its and pieces of information . . . fitted together until a picture is formed which leads a reasonably prudent person to believe a crime has been . . . committed and that evidence of the crime may be found on a particular person or in a place or means of conveyance.' " *State v. Marks*, 231 Kan. 645, 647, 647 P.2d 1292 (1982) (quoting *State v. Morgan*, 222 Kan. 149, 151, 563 P.2d 1056 [1977]). See *State v. Williams*, 229 Kan. 290, 291, 623 P.2d 1334, *reh. denied* 229 Kan. 646, 630 P.2d 694 (1981)."

In the present case, the district court viewed Detective Shipley's affidavit as containing general information from a confidential informant that Ratzlaff was involved in drug trafficking and that his supplier was Leo Gutierrez, but not containing information which linked Ratzlaff or his residence with Leo Gutierrez's appearance in Reno County on the date of the alleged transaction. It should also be mentioned that the affidavit contains the following statement:

"The informant further states that within the last week, the informant has overheard conversations made by the above listed individuals which would indicate that Leo Guitterez [*sic*] is to bring a large quantity of cocaine into Reno County for delivery to William R. Meyers and David Ratzlaff by the weekend of May 15 and 16, 17, 1992."

It appears that approximately the first three pages of the affidavit were prepared in advance, and the final page was added sometime before application was made to the judge for the search warrant.

The question before the court is whether the information in Detective Shipley's affidavit would lead a reasonably prudent person to believe that Ratzlaff had committed a crime and that evidence of it would be found in his residence. A review of the facts of several of our recent cases cited by the parties may be helpful for the purpose of establishing a benchmark or, at least, a range for the reasonably prudent person's belief.

In *State v. Doile*, 244 Kan. 493, 503, 769 P.2d 666 (1989), this court reversed Doile's conviction of possession of cocaine on the

ground that cocaine seized from his residence pursuant to a warrant should have been suppressed. Police officers who had been called to a club for another purpose saw Doile get out of a van in the parking lot, open the door of a nearby car which one of the officers knew belonged to Doile, bend down as if putting something in the car, close the door, and go into the club. One of the officers shined a flashlight into the car and saw on the console "what he believed to be a partially burned hand-rolled marijuana cigarette." 244 Kan. at 494. When Doile came out of the club, he got in the car and drove out of the parking lot. He was stopped; he did not have a license. The arresting officer testified that "he arrested Doile for possession of marijuana, DUI, and driving with a suspended license." 244 Kan. at 495. In a search of the car, the marijuana cigarette was seized along with a mirror and a baggie containing green vegetation. At the jail, Doile placed his wallet in a tray for personal effects. A drinking straw was inside it, and Doile attempted to conceal the straw.

Based on these events, police sought a warrant to search Doile's residence:

"The affidavit set forth the viewing of the marijuana cigarette in defendant's automobile in the parking lot, and the events of the stopping of the vehicle and the seizure of the mirror, the partially burned marijuana cigarette, and a baggie of marijuana. It further recited the seizure of the straw in which white powder residue was discovered. The affidavit further stated defendant had been convicted of selling cocaine in 1983, the sales having occurred in 1982. Based on this information, the officers sought a search warrant of defendant's residence.

"In *State v. Morgan*, 222 Kan. 149, 153, 563 P.2d 1056 (1977), we said:

'Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating protracted or continuous conduct at a particular location and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist.'

"Defendant had a straw containing traces of a white powder, which he tried to dispose of after arrest. He had a partially burned marijuana cigarette, a mirror, and a baggie of marijuana in his car. Almost five years previously, he had sold cocaine. No facts were alleged indicating any current drug-related activity was occurring at the residence. Do these facts warrant a finding of probable cause to believe defendant's residence contained marijuana, drug paraphernalia, and cocaine? We believe not." 244 Kan. at 501.

In *Mayberry*, 248 Kan. 369, the court affirmed jury convictions of first-degree murder and aggravated burglary. Dixie Long, whose body was found in her bed, was killed by a shotgun blast to her head. Telephone wires to the house had been cut, the front door was standing open, there were no other signs of entry into the house, and a window was broken at Long's beauty salon. Long's 13-year-old daughter reported that her mother and Mayberry, her mother's boyfriend, recently had been fighting. The daughter believed that Mayberry killed her mother. 248 Kan. at 372.

Mayberry argued that the affidavit supporting the application for search warrants for his residence and automobile was insufficient to establish probable cause that he killed Long. Here is the court's discussion of the information in the affidavit:

"The affidavit in the present case supplies information that the victim was found in her bedroom murdered by a shotgun blast. The affiant logically concluded the assailant's body or clothing might also be bloodied. The affidavit also supplies information that Mayberry had lived with the victim in the past, but had recently been ordered to move. Additionally, the affidavit states Mayberry and Long had been involved in a physical altercation the day preceding the murder. Finally, the affidavit informs of cut telephone wires outside the victim's home and suggests that the assailant may have broken into Long's beauty salon to obtain a key to the residence.

"The circumstantial evidence provided more than mere suspicion of Mayberry's guilt. Personal observation of the crime scene logically led to the conclusion that the suspect's clothing would be bloodied. Information that Mayberry had recently fought with the victim and struck her pointed the finger of suspicion toward Mayberry. The break-in at Long's business, along with information that a key to her residence was kept there, raised an inference the assailant had knowledge of the whereabouts of the key. The cumulative circumstantial evidence, therefore, was sufficient for the finding of probable cause. Thus, the box of shotgun shells discovered in Mayberry's bedroom and the needlenose pliers found in a toolbox in his automobile were admissible evidence in his trial." 248 Kan. at 378.

In *State v. Grissom*, 251 Kan. 851, 840 P.2d 1142 (1992), the defendant's automobile was searched pursuant to a warrant. Grissom argued "that the affidavit in support of the search warrant did not establish probable cause to search [his] car for evidence relating to Joan Butler's disappearance." 251 Kan. at 909. After

setting out the standard for review and defining probable cause, the court stated:

"The State and Grissom summarize the information contained in the affidavit as follows:

'Joan Butler was reported missing on June 19, 1989. Six days later, defendant was observed in possession of her vehicle in Lawrence, Kansas, where he was seen unlocking the car trunk. He then fled from the police, [and] returned to Lenexa, where he moved all of his personal belongings from his apartment to the Toyota. At the apartment complex in Grandview the apartment manager observed a light-skinned black male matching the description of Richard Grissom, whom she knew was wanted in Kansas for an abduction. A brown Toyota Corolla was parked in the complex lot and it did not belong there.'

"The magistrate judge did not err in issuing the search warrant. There was a 'fair probability' evidence would be found in Grissom's car relating to the disappearance of Joan Butler, particularly since Grissom recently had moved many of his personal belongings to his car." 251 Kan. at 910.

None of these cases, *Doile, Mayberry,* or *Grissom,* involves affidavit information supplied by a confidential informant. The additional factors which need to be considered when a confidential informant is involved were discussed in *State v. Probst,* 247 Kan. 196, 795 P.2d 393 (1990). There, the informant's name was Shanley, and he cooperated with the Drug Enforcement Administration (DEA) "in the hope of getting cooperation from the DEA in his pending criminal proceedings." 247 Kan. at 198. He made a controlled buy of methamphetamine from Warren Cross in September 1988. In May 1989, search warrants for Cross' residence, a storage building at his business, and Probst's residence were issued. Facts of the controlled buy were set out in detail in the affidavit, but

"[t]he only information in the affidavit that related to the defendant Probst was succinctly set forth by the trial judge in his memorandum opinion. The court stated:

'The facts provided by the affidavit which relate directly to this defendant are limited. Such information includes 1.) defendant was convicted for possessing methamphetamine in her residence on February 17, 1988, fifteen months prior to the issuance of this search warrant; 2.) that in February, 1988, this defendant was the girlfriend and employee of Warren Cross; 3.) that during the controlled buy on September 7, 1988, Warren Cross removed the methamphetamine from the trunk of his vehicle when it was parked on the street in front of the defendant's residence; 4.) an unsupported statement by the confidential informant

that the defendant was involved in the sale and distribution of methamphetamine.'" 247 Kan. at 199.

Pointing out weaknesses in the affidavit, this court stated:

"Nothing was included in the affidavit about Shanley's drug activities, his arrest in Lyon County, his 'cooperating individual agreement' with the DEA, the lack of any information about his reliability, or the fact he had been convicted in federal court in April of 1989, prior to the execution of the affidavit by Upchurch." 247 Kan. at 200.

The court's discussion continued:

"[W]ith the exception of Probst's prior conviction, there is no factual information in the affidavit to support that the informant, Upchurch, or any other officer observed Probst at her residence or elsewhere with drugs or observed any activity indicating drug trafficking was occurring at her residence. The fact that Cross and Shanley obtained drugs from the trunk of a car parked on the city streets, or in an alley, near the home of Probst does not indicate drug activity by Probst. It is clear that the defendant was nowhere near her home at the time and the automobile from which the drugs were obtained did not belong to defendant and was not on her property.

"While the State relies upon Shanley's statement to [DEA agent] Upchurch that the defendant was involved in the sale and distribution of methamphetamine, Shanley testified that he based it solely on a newspaper account of the conviction in February of 1988. The conclusory statement of Shanley, absent any showing of reliability or knowledge by Shanley, cannot be considered as a basis for probable cause without more facts than were contained in the affidavit here." 247 Kan. at 201.

With respect to the State's specific reliance on Shanley's statement that Probst was involved in drug trafficking and Probst's conviction to show probable cause, the court stated:

"Here, Agent Upchurch had no prior experience with or knowledge of Shanley. All that was known was that he was the subject of federal prosecution as a drug violator who wanted to make a deal which might help him in that prosecution. He had not formerly furnished information and, by the time the affidavit was prepared in this case, Shanley had been convicted in federal court. Any reliance upon the statements of Shanley is questionable at best. . . .

. . . .

"While the affidavit here dwells at length upon the alleged continuous drug activity of Cross, the single conviction some fifteen months earlier of this defendant, standing alone, does not constitute grounds to believe the defendant was involved in a protracted or continuous course of drug trafficking. The fifteen-month-old conviction, without more, would undoubtedly be too stale to lead a

reasonable person to believe that drugs might still be found at the defendant's home." 247 Kan. at 202-03.

In the present case, there was more information about the confidential informant than there was in *Probst*. Here, the affiant stated that he had received reliable information from the informant on two previous occasions within two years about people who were involved in drug transactions. In *Probst*, the affiant had no prior experience with the informant. As in *Probst*, however, in the present case the affidavit lacked any information about the informant's criminal activities and his motive for cooperating with law enforcement officials. With regard to the defendant's involvement in drug transactions, the information in *Probst* included her previous conviction of possessing methamphetamine as well as the informant's statement that she was involved in the sale and distribution of methamphetamine. Here, there was only the statement of the informant that Ratzlaff was involved in drug trafficking.

In *Probst*, the court concluded that the affidavit lacked probable cause for the issuance of the search warrant for Probst's home. 247 Kan. at 203. Stated otherwise, the court concluded that the affidavit lacked information sufficient to lead a reasonably prudent person to believe that Probst had committed a crime and that evidence of it would be found in her residence. Comparison of the affidavits in *Probst* and the present case reveals only subtle differences in the quality and quantity of their information. In the present case, the affidavit lacked information sufficient to lead a reasonably prudent person to believe that Ratzlaff had committed a crime and that evidence of it would be found in his residence.

In the present case more than in *Probst*, emphasis has been placed by the parties on the question whether the information was sufficient to link Ratzlaff's residence with the alleged drug trafficking. In this regard, the State relies on *State v. Bartlett*, 14 Kan. App. 2d 237, 242, 787 P.2d 1211, *rev. denied* 246 Kan. 769 (1990), for the rule that "normal inferences as to where a person would be likely to keep the items sought" may be indulged. Following the rationale of *Bartlett*, one might conclude that a rea-

sonably prudent person would believe that evidence of the crime would be found in Ratzlaff's residence *if* it concluded that the same reasonably prudent person would believe he had committed a crime. It is this second proposition that lacks support in the affidavit. In addition, the affidavit must establish a nexus between the alleged criminal activity and the place to be searched.

In summary, the affidavit contains the following information: (a) The confidential informant told police that Ratzlaff and Meyers were the main dealers in a large-scale marijuana and cocaine distribution ring in Hutchinson and that Meyers sells the marijuana to James Roets; (b) the informant gave the police Ratzlaff's correct residential address; (c) the informant named several people who he said were cocaine customers of Meyers and Ratzlaff; (d) the informant overheard conversations during the week before May 17, 1992, indicating that a large quantity of cocaine would be delivered by Leo Gutierrez to Meyers and Ratzlaff "by the weekend of May 15 and 16, 17, 1992"; (e) on May 17, the informant told police that Gutierrez was in Hutchinson; (f) police observed Meyers, Roets, and Gutierrez in various vehicles and at various locations which the informant had linked to Meyers; and (g) Gutierrez's vehicle was stopped with a large quantity of cash in it.

Hence, a confidential informant said that Ratzlaff was a drug trafficker who, along with others, would receive delivery of drugs from Gutierrez on or about May 17. Police surveillance established that Gutierrez was in town on May 17, meeting with the other drug dealers named by the informant but not with Ratzlaff. The State contends that because an independent law enforcement investigation corroborated the informant's information about the drug trafficking operation, his information about Ratzlaff's involvement was verified as well. We disagree. In *Gates,* the United States Supreme Court referred to *Draper v. United States*, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959), as the classic case of an informant's statements being reasonably corroborated to support a warrant:

"There, an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago on one of two days, and that he would be

carrying a quantity of heroin. The informant also supplied a fairly detailed physical description of Draper, and predicted that he would be wearing a light colored raincoat, brown slacks, and black shoes, and would be walking 'real fast.' *Id.*, at 309. Hereford gave no indication of the basis for his information.

"On one of the stated dates police officers observed a man matching this description exit a train arriving from Chicago; his attire and luggage matched Hereford's report and he was walking rapidly. We explained in *Draper* that, by this point in his investigation, the arresting officer 'had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, [the officer] had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true,' *id.*, at 313." 462 U.S. at 242-43.

In the present case, with the exception of Ratzlaff's address, the independent law enforcement investigation failed to verify the informant's information about Ratzlaff's involvement as a principal player in a drug trafficking ring or drug-related activity at his residence. To the contrary, the surveillance of defendant's residence indicated no activity at all, and law enforcement officers were aware that Ratzlaff was not in town during this period of time. There are no facts establishing probable cause to believe Ratzlaff committed a crime or that illicit drugs could be found at his residence. At best, the affidavit gives rise to a suspicion that Ratzlaff was involved in illicit drug activity and that evidence of such activity could be found in his residence. Although the evidence need not prove guilt beyond a reasonable doubt, it must constitute more than mere suspicion. *State v. Mayberry*, 248 Kan. at 376. We agree with the district court that the affidavit failed to establish probable cause for the issuance of the warrant to search Ratzlaff's residence.

Having concluded that no probable cause existed for the issuance of the search warrant, does the good faith exception to the exclusionary rule apply? In *Doile*, the court gave the following account of the "good faith exception" to the exclusionary rule:

"In *Leon*, the Court traces the history and purpose of the exclusionary rule. Highly summarized, the exclusion of evidence which the police have unlawfully obtained is a penalty aimed at the police and is imposed to deter future wrongful conduct. A strong theme running throughout *Leon* is that evidence seized under

a search warrant subsequently held to be invalid is not to be suppressed absent some chicanery or wrongdoing by the police. *Leon* refers to this as the good faith exception to the exclusionary rule. This is somewhat of a misnomer, as the opinion makes it clear that such evidence is not to be excluded unless bad faith is shown. As *Leon* states: 'We . . . conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' 468 U.S. at 918.

Hence, *Leon* states that the evidence so seized is not to be excluded unless it is shown: (1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. *United States v. Leon*, 468 U.S. at 923." 244 Kan. at 501-02.

In *Probst*, the court added the following quotation from *Leon* for providing guidance for determining whether the good faith exception applies:

" 'We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good-faith exception assume that the exception will turn on the subjective good faith of individual officers. "Grounding the modification in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." *Illinois v. Gates*, 462 U.S., at 261, n.15 (White, J., concurring in judgment); see *Dunaway v. New York*, 442 U.S., at 221 (Stevens, J., concurring). The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. *United States v. Peltier*, 422 U.S. 531, 542 (1975).' 468 U.S. at 919 n.20.

'[W]e also eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant. . . . Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate—may be considered.' 468 U.S. at 922 n.23." 247 Kan. at 204.

In the present case, the district court ended the memorandum opinion it issued on December 23 as follows:

"Having concluded that no probable cause existed for the issuance of the search warrant of [Ratzlaff's] residence, the issue of whether the items seized

at the defendant's residence should be suppressed must be determined through consideration of *United States v. Leon* and *Franks v. Delaware*, (citations omitted). The evidentiary hearing upon that issue is hereby scheduled for January 29, 1993 at 9:00 a.m."

*Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), established that a criminal defendant could challenge the veracity of the affidavit used by police to procure a search warrant.

"In *State v. Lockett*, 232 Kan. 317, 319, 654 P.2d 433 (1982), this court, relying upon *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978), reviewed the general rules applying to a false statement in an affidavit for a search warrant and extended the rules to a deliberate omission. This court stated that a person attacking the affidavit must show the deliberate omission of material information. 232 Kan. at 319." *Grissom*, 251 Kan. at 907.

"Material" for this purpose was determined in *State v. Lockett*, 232 Kan. 317, 320, 654 P.2d 433 (1982), as follows: "[I]f the issuing judge had the omitted information before him when he examined the affidavit, would a finding of probable cause to issue a search warrant still have been proper?"

In *Probst*, we said:

"While *Leon* only refers to the magistrate being misled 'by false information,' we have held that 'a deliberate omission is often equal to an actual misstatement' in finding that the failure to include material information in an affidavit for a search warrant may invalidate the warrant. *State v. Lockett*, 232 Kan. 317, 319, 654 P.2d 433 (1982)." 247 Kan. at 206-07.

*Leon* "requires officers to have a reasonable knowledge of what the law prohibits. [Citation omitted.]" 468 U.S. at 919 n.20. The Court in *Leon* further stated:

"As we observed in *Michigan v. Tucker*, 417 U.S. 433, 447 (1974), and reiterated in *United States v. Peltier*, 422 U.S., at 539:

'The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.'

The *Peltier* Court continued, *id.*, at 542:

'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " 468 U.S. at 919.

The *Leon* Court then articulated the four situations, previously quoted, in which evidence should be suppressed. The question here is whether Detective Shipley, as a well-trained police officer, reasonably should have known that his affidavit failed to establish probable cause.

The district court made findings of fact which are to be accepted by this court. Among those findings are that Detective Shipley intentionally omitted from the affidavit the following information: First, Detective Shipley had been told by the informant that the cocaine delivery had been made to one of Meyers' addresses. Second, Detective Shipley had been told by the informant that Ratzlaff was out of town for several days. Third, "intensive and extensive" police surveillance had been conducted of Ratzlaff's residence at the time when the cocaine delivery was to be made which "revealed absolutely no activity." In addition to being deliberate, these omissions seem to be material under the *Lockett* definition. That is, if the issuing judge had had the omitted information before her when examining the affidavit, a finding of probable cause to issue a search warrant would not have been proper. 232 Kan. at 320.

Also among the district court's findings is that Detective Shipley misstated that the informant said the deal was taking place rather than that the cocaine had been delivered several hours earlier. It appears that the district court believed the sense of urgency and pressure to act quickly felt by the issuing judge would have been heightened by the affiant's use of present tense. Detective Shipley testified that the informant advised him the drugs had already been delivered to Roets' residence, but "the collection of the money had not occurred yet." Thus, it appears that the district court also may have believed the use of present tense misled the issuing judge into believing Ratzlaff's residence could not be ruled out as a possible delivery site.

This court applies *Leon* so that evidence is excluded only in instances where it is shown that the official who issued the warrant was deliberately misled by false information or wholly abandoned his or her neutral and detached role, that the warrant was fatally lacking in specificity, or that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. See 244 Kan. at 502. In this case, the district court concluded that Detective Shipley " 'did not manifest objective good faith by relying on the warrant for this defendant's residence based on an affidavit so lacking in indicia of probative cause as to render official belief in its existence unreasonable' (*United States v. Leon*, supra, syllabus #20)." Although the district court could also have concluded that Judge Macke Dick was deliberately misled by material misstatements and omissions, it did not, stating:

"This Court believes Detective Shipley did not approach the issuing magistrate with ill-intent and total deception. The lack of good faith is found only in Detective Shipley's desire to unreasonably extend the facts to this defendant's residence and to draw this defendant within the realm of probable cause by inference and innuendo when the facts and information dictated the contrary."

We agree with the conclusion reached by the district court that the search of defendant's residence does not fall within the good faith exception as expressed in *Leon*, and thus the evidence obtained as a result of the search must be suppressed.

The judgment of the Court of Appeals reversing the district court is reversed. The judgment of the district court is affirmed.