No. 64,429

STATE OF KANSAS, *Appellant*, v. DIANA LEA PROBST, *Appellee*.

(795 P.2d 393)

Opinion filed July 13, 1990.

*Kevin C. Fletcher*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Kenneth M. Carpenter*, of Carpenter Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: The State of Kansas appeals from a district court order dismissing criminal charges against the defendant, Diana Lea Probst. Following a combined preliminary hearing and a hearing on a defense motion to suppress evidence seized under a search warrant, the trial court granted the motion to suppress and then dismissed the charges, as there was no other evidence that a crime had been committed. The State has appealed pursuant to K.S.A. 22-3602(b)(1). We affirm.

The State asserts two issues on appeal: (1) whether the trial court erred in finding no probable cause for the issuance of the search warrant, and (2) whether, if the affidavit filed in support of the issuance of the search warrant lacked probable cause, the search warrant nevertheless meets the good faith exception to the exclusionary rule.

The determination of the issues before the court requires a careful review of the allegations of the affidavit for the issuance of the search warrant and the evidence presented by the State to support the validity of the warrant at the hearing on the motion to suppress. Therefore, it is necessary that the factual background be set forth in some detail.

In the late summer and early fall of 1988, agents of various law enforcement agencies, including the Drug Enforcement Administration (DEA), the Reno County Sheriff's Office, the Kansas Bureau of Investigation, and the Hutchinson Police Department, cooperated in an undercover drug investigation in Hutchinson and Reno County. The principal target of the investigation was Warren Cross, a used car dealer in Hutchinson, who was suspected of the sale of methamphetamine. The defendant,

Diana Lea Probst, was an employee and companion of Cross. Both Cross and Probst were charged with various drug violations and their cases were consolidated in the district court. This appeal is concerned only with the charges against the defendant Probst.

The principal officer involved in the investigation of the suspected drug activities of Cross was Special Agent Michael F. Upchurch of the DEA, who solicited the aid of an informant, Thomas R. Shanley. On August 5, 1988, Shanley was arrested by the Kansas Highway Patrol on the Kansas Turnpike. A search of Shanley's car produced over 50 grams of methamphetamine, $10,720 in cash, and two firearms. All of those items, along with the automobile, were confiscated by the federal government and federal criminal charges were filed against Shanley. While Shanley was being held in the Lyon County jail, Agent Upchurch visited him and sought his cooperation in Upchurch's investigation of illegal drug activities. Shanley, in the hope of getting cooperation from the DEA in his pending criminal proceedings, agreed to assist the DEA agents and entered into a "cooperating individual agreement" with Upchurch to provide information and services to the DEA.

Shanley then was enlisted to assist the DEA in the investigation of Cross. Upchurch directed Shanley to make contact with Cross and he did so prior to September 7, 1988. During his initial contacts, Shanley made arrangements to purchase methamphetamine from Cross. The buy was scheduled for September 7, 1988. On that date Upchurch wired Shanley with a hidden recording device, furnished him money to make the purchase, and placed him under surveillance. Shanley met Cross at his used car lot and the two of them drove to 15 West 16th Street in Hutchinson, where Probst lived. At the time, Probst was at work. Shanley and Cross parked near the Probst residence and Cross proceeded to open the trunk of an automobile parked nearby. The evidence is conflicting whether this automobile was parked in the street or in the alley, but it is clear that it was not parked on Probst's property. The car did not belong to Probst. Cross removed a yellow metal ammunition box from the trunk of the parked car and returned with it to the other vehicle; he and Shanley then returned to the Cross used car lot.

Upon their return to the used car lot, Cross opened the ammunition box, removed a quantity of methamphetamine from the box and completed the sale to Shanley. Shanley met with Cross again on September 9, 1988, and rode with him to a warehouse or storage building Cross used in his automobile business. At that location Shanley observed Cross remove methamphetamine from one of the cars stored in the building.

Nothing further appears to have transpired until May 1989 when Upchurch approached the Reno County Attorney seeking prosecution. After reviewing information furnished by Upchurch, the county attorney prepared an affidavit for three search warrants. The affidavit, signed by Upchurch on May 16, 1989, sought search warrants for the residence of Warren Cross, the storage building Cross used in his car business, and the residence of Diane Lea Probst.

The affidavit, consisting of six legal size typewritten pages, related the experience of Agent Upchurch, his knowledge of the general conduct of drug traffickers, and the involvement of Shanley in the investigation of Cross. The facts of the September 7, 1988, buy of methamphetamine by Shanley from Cross and details about the suspected drug activity of Cross were set forth at great length. The only information in the affidavit that related to the defendant Probst was succinctly set forth by the trial judge in his memorandum opinion. The court stated:

"The facts provided by the affidavit which relate directly to this defendant are limited. Such information includes 1.) defendant was convicted for possessing methamphetamine in her residence on February 17, 1988, fifteen months prior to the issuance of this search warrant; 2.) that in February, 1988, this defendant was the girlfriend and employee of Warren Cross; 3.) that during the controlled buy on September 7, 1988, Warren Cross removed the methamphetamine from the trunk of his vehicle when it was parked on the street in front of the defendant's residence; 4.) an unsupported statement by the confidential informant that the defendant was involved in the sale and distribution of methamphetamine."

Nevertheless, the district judge, sitting as the magistrate for purposes of the search warrants, on May 16, 1989, authorized and issued search warrants for the three requested locations, including the home of the defendant at 15 West 16th Street in Hutchinson. The search warrants were executed the same day and a quantity of methamphetamine, drug paraphernalia, and

related items were recovered from the home of the defendant. The defendant was subsequently charged with possession of illegal drugs, possession of drugs without a tax stamp, and possession of drug paraphernalia.

Nothing was included in the affidavit about Shanley's drug activities, his arrest in Lyon County, his "cooperating individual agreement" with the DEA, the lack of any information about his reliability, or the fact he had been convicted in federal court in April of 1989, prior to the execution of the affidavit by Upchurch.

At the hearing, held September 26, 1989, on the motion to suppress the evidence recovered from the home of the defendant, the State presented the testimony of Shanley and Agent Upchurch. Following the hearing, the judge took the matter under advisement so he could review the lengthy affidavit, the search warrant, and the testimony and evidence produced at the hearing. On October 6, 1989, the judge issued his memorandum opinion in which he found that the affidavit lacked probable cause for the search of the defendant's home. He also found that the affidavit did not meet the good faith exception to the exclusionary rule as promulgated in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984).

The State's first argument is that the affidavit of Agent Upchurch to support the issuance of the search warrant meets probable cause standards.

Recently, in *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989), this court stated the scope of appellate review when considering rulings on the issuance of search warrants, and the rules on probable cause determinations. The court held:

"Before a warrant for arrest or search may be issued, there must be a finding of probable cause by a neutral and detached magistrate. The complaint and supporting affidavits should supply the magistrate with sufficient factual information to support an independent judgment that probable cause to arrest exists." Syl. ¶ 3.

"In determining whether to issue a warrant for arrest or search, a magistrate should consider the 'totality of the circumstances' presented and make a practical, common-sense decision whether there is a fair probability that a crime has been committed and the defendant committed the crime, or that contraband or evidence of a crime will be found in a particular place." Syl. ¶ 4.

"On appeal, the duty of the reviewing court is simply to ensure that the magistrate issuing a warrant had a substantial basis for concluding that probable cause existed." Syl. ¶ 5.

In claiming the trial court erred in finding the affidavit did not show probable cause, the State contends the facts in the affidavit show a "fair probability" methamphetamine would be found at Probst's residence and show a protracted and continuing course of drug trafficking. Further, the State contends it does not have to prove the confidential informant's reliability to establish probable cause and the trial court erred in allowing a hearing to attack the contents of the affidavit.

We set forth above the trial court's summary of the allegations of the affidavit which pertain to this defendant. The affidavit goes to great lengths to describe the activities of the defendant Cross and the details of the sale of methamphetamine to Shanley. However, with the exception of Probst's prior conviction, there is no factual information in the affidavit to support that the informant, Upchurch, or any other officer observed Probst at her residence or elsewhere with drugs or observed any activity indicating drug trafficking was occurring at her residence. The fact that Cross and Shanley obtained drugs from the trunk of a car parked on the city streets, or in an alley, near the home of Probst does not indicate drug activity by Probst. It is clear that the defendant was nowhere near her home at the time and the automobile from which the drugs were obtained did not belong to defendant and was not on her property.

While the State relies upon Shanley's statement to Upchurch that the defendant was involved in the sale and distribution of methamphetamine, Shanley testified that he based it solely on a newspaper account of the conviction in February of 1988. The conclusory statement of Shanley, absent any showing of reliability or knowledge by Shanley, cannot be considered as a basis for probable cause without more facts than were contained in the affidavit here.

In *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 (1983), the Court abandoned the earlier two-pronged test which required the affiant to show the informant's basis of knowledge and to provide sufficient facts to establish the veracity of the informant or the reliability of the

information. Yet, in reaffirming a "totality of the circumstances" analysis, the Court made it clear that the veracity of the informant, the reliability of the information, and the basis of the informant's knowledge remain factors to be considered. 462 U.S. at 238. We recently discussed *Gates* and the totality of the circumstances test in *State v. Toler*, 246 Kan. 269, 787 P.2d 711 (1990).

Here, Agent Upchurch had no prior experience with or knowledge of Shanley. All that was known was that he was the subject of federal prosecution as a drug violator who wanted to make a deal which might help him in that prosecution. He had not formerly furnished information and, by the time the affidavit was prepared in this case, Shanley had been convicted in federal court. Any reliance upon the statements of Shanley is questionable at best. In *State v. Morgan*, 222 Kan. 149, 563 P.2d 1056 (1977), this court, in considering the sufficiency of an affidavit for a search warrant, stated:

"Sufficient facts must be placed before the issuing magistrate to enable him to make an intelligent and independent determination that probable cause exists. *Bald conclusions*, mere affirmations of belief, or suspicions *are not enough* and, while an affidavit may be based on hearsay, there must be sufficient affirmative allegations of fact as to affiant's personal knowledge to provide a rational basis upon which a magistrate can make a judicious determination of probable cause." 222 Kan. at 151. (Emphasis added.)

The State also relies upon the conviction of the defendant in February 1988 in contending the affidavit shows probable cause that drugs might be found at defendant's residence. In *Morgan*, this court observed:

"Evidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location; however, where an affidavit gives evidence of activity indicating *protracted or continuous conduct at a particular location* and that evidence provides a reasonable basis to infer drugs are still present, probable cause may exist. [Citations omitted.] A police officer may also add to other evidence the fact the location to be searched is occupied or frequented by known narcotics users or sellers. [Citations omitted.]" 222 Kan. at 153. (Emphasis added.)

In *State v. Jacques*, 225 Kan. 38, 587 P.2d 861 (1978), we reexamined our opinion in *Morgan* and, in considering the weight to be given an isolated sale or event, the court stated:

"A protracted or continuous course of drug traffic at a particular location unquestionably would support the determination of probable cause. However, a single isolated drug sale might have been also been sufficient to support the determination if such sale had occurred recently, and additional facts had been established to provide some reasonable basis to infer drugs remained on the premises after the sale. The lapse of time which would tend to remove all probable cause for issuance of a search warrant by destroying any reasonable belief that drugs remain on the premises will depend on the facts and circumstances of each particular case." 225 Kan. at 42.

While the affidavit here dwells at length upon the alleged continuous drug activity of Cross, the single conviction some fifteen months earlier of this defendant, standing alone, does not constitute grounds to believe the defendant was involved in a protracted or continuous course of drug trafficking. The fifteen-month-old conviction, without more, would undoubtedly be too stale to lead a reasonable person to believe that drugs might still be found at the defendant's home.

In the instant case, the trial court stated:

"When reviewing the totality of circumstances applied to this defendant, most, if not all, the circumstances supporting probable cause are lacking. In essence, the only information applying to this defendant is her possession of methamphetamine fifteen months previously and that methamphetamine was removed from a friend's car trunk while parked near the defendant's residence nine months previous. Those two elements do not approach sufficient probable cause to believe illegal drugs were in the defendant's premises."

We agree with the trial court that the affidavit in this case lacked probable cause for the issuance of the search warrant for the home of the defendant.

The State next asserts that if the affidavit supporting the search warrant lacked probable cause, the evidence still should have been admissible under the "good faith exception" to the exclusionary rule adopted in *United States v. Leon*, 468 U.S. 897. We considered and discussed the rule from *Leon* at some length in the majority and concurring opinions in *State v. Doile*, 244 Kan. 493. In *Doile* we described the exception embraced in *Leon*, stating:

"In *Leon* the court traces the history and purpose of the exclusionary rule. Highly summarized, the exclusion of evidence which the police have unlawfully obtained is a penalty aimed at the police and is imposed to deter

future wrongful conduct. A strong theme running throughout *Leon* is that evidence seized under a search warrant subsequently held to be invalid is not to be suppressed absent some chicanery or wrongdoing by the police. *Leon* refers to this as the good faith exception to the exclusionary rule. This is somewhat of a misnomer, as the opinion makes it clear that such evidence is not to be excluded unless bad faith is shown. As *Leon* states: 'We . . . conclude that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.' 468 U.S. at 918. Hence, *Leon* states that the evidence so seized is not to be excluded unless it is shown: (1) that the judge or magistrate who issued the warrant was deliberately misled by false information; (2) that the judge or magistrate wholly abandoned his or her neutral and detached role; (3) that the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; or (4) that there was so little indicia of probable cause contained in the warrant that it was entirely unreasonable for an officer to believe the warrant valid. *United States v. Leon*, 468 U.S. at 923." 244 Kan. at 501-02.

In providing guidance for the determination of whether the good faith exception applies, the *Leon* court stated:

"We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good-faith exception assume that the exception will turn on the subjective good faith of individual officers. 'Grounding the modification in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment.' *Illinois v. Gates*, 462 U.S., at 261, n. 15 (White, J., concurring in judgment); see *Dunaway v. New York*, 442 U.S., at 221 (Stevens, J., concurring). The objective standard we adopt, moreover, requires officers to have a reasonable knowledge of what the law prohibits. *United States v. Peltier*, 422 U.S. 531, 542 (1975)." 468 U.S. at 919 n.20.

"[W]e also eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant. . . . Accordingly, our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances—including whether the warrant application had previously been rejected by a different magistrate— may be considered." 468 U.S. at 922 n.23.

In *Leon*, the court did not totally abandon the requirement of probable cause and stated the affidavit must contain a substantial basis indicating probable cause. The court said:

"[R]eviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining

the existence of probable cause.' *Illinois v. Gates,* 462 U.S., at 239. 'Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.' *Ibid.* See *Aguilar v. Texas,* [378 U.S.], at 114-115; *Giordenello v. United States,* 357 U.S. 480 (1958); *Nathanson v. United States,* 290 U.S. 41 (1933). Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, *Illinois v. Gates, supra,* at 238-239, or because the form of the warrant was improper in some respect." 468 U.S. at 915.

As set forth in *Doile,* the Court in *Leon* delineated four areas in which the newly adopted exception would not apply. They include: (1) when the judge or magistrate who issued the warrant was deliberately misled by false information; (2) when the judge or magistrate wholly abandons his or her neutral and detached role; (3) when the warrant was so lacking in specificity that the officers could not determine the place to be searched or the things to be seized; and (4) when there was so little indicia of probable cause contained in the affidavit for the warrant that it was entirely unreasonable for an officer to believe the warrant valid. *United States v. Leon,* 468 U.S. at 923; *State v. Doile,* 244 Kan. at 502.

In the present case we are faced with the unusual, if not unique, fact that the district judge who heard the motion to suppress the evidence was the same judge who approved the issuance of the warrant in the first place. The judge is to be commended for his integrity and candor in acknowledging his earlier error. In his opinion, the trial judge stated:

"After a finding of the lack of probable cause within the contents of the affidavit, the next step is whether the case falls within the exception to the exclusionary rule created by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 277 (1984). The Court in *Leon* ruled that the Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid. However, this reasonable reliance exception does not apply where the issuing magistrate wholly abandoned his judicial role and, in such circumstances, no reasonably well-trained officer should rely on the warrant and an officer does not manifest objective good faith by relying on the

warrant based on an affidavit so lacking in indicia of probative cause as to render official belief in its existence entirely unreasonable.

"The single affidavit was submitted to the issuing magistrate in applying for three separate search warrants. The magistrate apparently found the requisite probable cause to support one warrant and inappropriately extended such finding to the other requested warrants, thus abandoning his judicial role. The affidavit is so lacking in information regarding this defendant and her residence that an officer of the experience and training of Agent Upchurch could not rely on the warrant for the defendant's residence and did not exercise objective good faith in relying upon the affidavit. Thus, this case does not fall within the reasonable reliance exception created by *Leon.*"

Thus, it appears that the judge found that the *Leon* good faith exception to the exclusionary rule was not applicable for at least two reasons. First, the judge found that he had "wholly abandoned his judicial role" as a neutral and detached magistrate and second, that no reasonably well-trained officer, which Agent Upchurch was, could have possibly relied upon this affidavit, which was so lacking in probable cause as it related to this defendant's home.

While the trial judge does not go into detail as to the circumstances which convinced him that he had abandoned his judicial role when he issued the warrant, there are several possibilities. It is quite possible that the magistrate, in the press of other duties, did not take sufficient time to actually study the lengthy affidavit aimed primarily at Cross, and failed to winnow out the meager allegations relating to the defendant Probst. An initial reading of the affidavit with its myriad of allegations about the extensive methamphetamine trafficking of Cross could well have misled the magistrate. It may be that the magistrate, having found the allegations sufficient as to Cross, merely assumed the affidavit stated probable cause as to defendant Probst. Agent Upchurch's lack of any knowledge about the reliability of the informant Shanley, and the failure to include the known information about Shanley's drug violations and conviction, may also have been a factor. While *Leon* only refers to the magistrate being misled "by false information," we have held that "a deliberate omission is often equal to an actual misstatement" in finding that the failure to include material information in an affidavit for a search warrant

may invalidate the warrant. *State v. Lockett*, 232 Kan. 317, 319, 654 P.2d 433 (1982).

Suffice it to say, the issuing magistrate is the only person who can actually know whether he abandoned his duty, and when he acknowledges that he did, it is not for this court to say otherwise.

We conclude that under the unusual circumstances here, the district court did not err in finding that the affidavit for the search warrant lacked probable cause and that the good faith exception as promulgated by *Leon* did not apply in this case.

The judgment is affirmed.