(41 P.3d 871)
No. 86,873
No. 86,874

STATE OF KANSAS, *Appellant*, v. JOSH L. JACKSON and
THOMAS W. HACKLER, II, *Appellees*.

Opinion filed February 22, 2002.

*James R. Watts*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Darren K. Patterson*, of El Dorado, for appellees.

Before ELLIOTT, P.J., GERNON and GREEN, JJ.

GREEN, J.: Josh L. Jackson and Thomas W. Hackler, II, who were visiting an alleged drug house, were searched under the "any other person present" clause of a residential search warrant. The police recovered marijuana from both men, and they were later charged with possession of marijuana. Jackson and Hackler moved to suppress the evidence, maintaining that the search of all persons present was pursuant to an illegal general search warrant. Following a consolidated hearing on motions to suppress, the trial court suppressed the evidence and dismissed the charges. The State appeals, arguing that probable cause supported a search warrant authorizing the search of all persons present at the residence. Alternatively, the State argues that if probable cause did not support the all persons present clause of the search warrant, the evidence seized under the warrant was admissible under the good faith exception to the exclusionary rule of the Fourth Amendment to the United States Constitution. The State further argues that the trial court failed to show the proper deference to the probable cause determination of the judge who issued the warrant. We disagree and affirm.

Detective Robert Bartlett of the Butler County Drug Task Force appeared before the Honorable Charles M. Hart. Detective Bartlett provided the judge with an application and affidavit seeking a search warrant. That affidavit requested authority to search the residence of Charles Watters, 1027 Osage, El Dorado, Kansas, and to seize evidence of the production, use, and sale of methamphetamines.

Included in the affidavit was a detailed description of the detective's training and experience, including what he had learned regarding common practices for drug users and dealers. The affidavit also included a description of the property to be searched. In addition, the affidavit listed Watters' arrests and convictions for drug violations, including an arrest for possession with intent to distribute. The affidavit also included details of a recent drug buy at Watters' residence by a confidential informant which resulted in the controlled purchase of methamphetamines.

In the affidavit, the officer concluded that based on the buy recently made by the confidential informant, on the suspect's prior arrests, and on his extensive training and experience in dealing with such places, Watters' residence was a "drug house." He stated that based on his training and experience, residents and visitors to such drug houses regularly keep individual supplies of drugs, paraphernalia, and other controlled substances on their persons or in their vehicles, and concluded that he would expect both residents and visitors to have contraband on their persons or in their vehicles.

Judge Hart signed the search warrant prepared by Detective Bartlett and authorized the search of the named residence and any outbuildings on the property. The warrant also authorized the officers to search Watters and "any other person(s) present" as well as all vehicles registered to or driven by Watters or other unknown individuals present.

When the search warrant was executed, Watters was present at the residence and was arrested. Jackson and Hackler were also there. Officers searched Jackson and Hackler and discovered marijuana and drug paraphernalia on their persons.

The State charged Jackson and Hackler with possession of marijuana and possession of drug paraphernalia. Jackson and Hackler

later moved to suppress the evidence seized from their persons, arguing that the warrant authorizing the search of anyone present at the residence was an illegal general search warrant. The parties stipulated that the officers searched Jackson and Hackler entirely under the any other persons present clause of the search warrant and not due to exigent circumstances.

The trial court held that the warrant affidavit lacked sufficient indicia of probable cause as to the search of any other persons present at the residence and suppressed the evidence seized from Jackson and Hackler. Specifically, the trial court found that the lack of evidence in the affidavit of regular traffic to and from the residence made a finding of probable cause impossible. Further, the trial court held that the good faith exception to the exclusionary rule did not apply. The trial court then dismissed the charges.

The State's first argument on appeal is that the trial court erred in granting the motion to suppress because probable cause supported the search of any other persons present at Watters' residence. The State bears the burden of proving the lawfulness of a search and seizure at a hearing on a motion to suppress. *State v. Vandiver*, 257 Kan. 53, 57, 891 P.2d 350 (1995). When reviewing a trial court's decision on a motion to suppress evidence, an appellate court gives great deference to the factual findings of the trial court. *State v. DeMarco*, 263 Kan. 727, 732, 952 P.2d 1276 (1998).

This court will not reweigh the evidence but will review the trial court's findings to determine whether they are supported by substantial competent evidence. The ultimate determination on the suppression of evidence, however, is a question of law requiring independent appellate determination. 263 Kan. at 732.

Here, the facts were not in dispute and the parties stipulated that the evidence was seized as a result of the all persons present clause of the search warrant. Consequently, there is no need to verify the trial court's factual findings with substantial competent evidence. The remaining decision regarding the suppression of the evidence must be reviewed de novo. See 263 Kan. at 732.

When reviewing the validity of a search warrant, this court must determine whether the magistrate had a substantial basis for issu-

ing it. A substantial basis for the warrant depends on whether probable cause existed under the totality of the circumstances. In making that determination, this court gives great deference to the magistrate's determination. A magistrate is required to assess all of the circumstances presented and make a practical, common-sense decision about whether a crime has been committed or is in the process of being committed and whether there is a fair likelihood that the evidence will be found in the place specified. *State v. Gilbert*, 256 Kan. 419, 421-22, 886 P.2d 365 (1994).

Although general warrants are constitutionally prohibited, warrants authorizing the search of all persons present at a location are not per se invalid. *State v. Loins,* 26 Kan. App. 2d 624, 627, 993 P.2d 1231 (1999), *rev. denied* 269 Kan. 938 (2000); *State v. Horn*, 15 Kan. App. 2d 365, 366, 808 P.2d 438, *rev. denied* 248 Kan. 998 (1991). In cases involving drugs, the facts in the affidavit must infer that the sole or primary activity at the location subject to the search warrant is the sale of drugs and that everyone present is involved in the illegal activity. See 26 Kan. App. 2d at 627; 15 Kan. App. 2d at 367.

Kansas has not determined what information is sufficient to infer that the primary activity at a location is the sale of drugs. However, in *Loins*, this court compared the facts in that case to those found sufficient in other jurisdictions. *Loins* noted that

"[g]enerally, an 'all-persons' search warrant will be upheld when the affidavit includes information that the place to be searched is a private residence, that drug use and distribution occur at the place, and that there was a regular traffic of persons entering to make purchases. See, *e.g., Commonwealth v. Smith*, 370 Mass. 335, 339, 348 N.E.2d 101, *cert. denied* 429 U.S. 944 (1976) (upholding an all-persons warrant based on an affidavit that stated that occupants were selling drugs and that there was a regular traffic of persons entering to make purchases); *State v. Hinkel*, 365 N.W.2d 774, 775-76 (Minn. 1985) (finding probable cause for an all-persons warrant based on an affidavit that included complaints from neighbors about illegal activity at a house and information that illegal liquor sales occurred there); *People v. Easterbrook*, 43 App. Div. 2d 719, 720, 350 N.Y.S.2d 442 (1973), *aff'd* 35 N.Y.2d 913, 364 N.Y.S.2d 899, 324 N.E.2d 367, *cert. denied* 421 U.S. 965 (1974) (finding probable cause for an all-persons warrant based on statements in the affidavit indicating that drug sales and consumption occurred at the apartment); *Com. v. Graciani*, 381 Pa. Super. 626, 630, 554 A.2d 560 (1989) (finding that the confidential informant's report of a drug sale at the private residence and

the easily hidden characteristic of the contraband justified the all-persons warrant); *Com. v. Heidelberg*, 369 Pa. Super. 398, 407, 535 A.2d 611 (1987) (upholding a warrant to search all persons because the affidavit included information that the sale of cocaine occurred on the premises); *Morton v. Commonwealth*, 16 Va. App. 946, 951, 434 S.E.2d 890 (1993) (stating that information in the affidavit regarding drug use and distribution in an apartment justified the search of all persons present); *State v. Hayes*, 196 Wis. 2d 753, 764-66, 540 N.W.2d 1 (Wis. App. 1995) (upholding the all-persons warrant because the affidavit included information of a recent sale of crack cocaine at the apartment and the officer's statement that, in his experience, it is common to find others at the location who are involved in the drug transactions)." 26 Kan. App. 2d at 627-28.

The affidavit in *Loins* stated: (1) that concerned neighbors reported drug activity at the trailer; (2) that a lot of juveniles visited the trailer; (3) that at least a dozen cars would arrive and leave over the course of an evening; (4) that a lot of parties occurred at the residence during which marijuana was consumed; (5) that Loins was known to be at the parties; (6) that the reported resident had been arrested for possession of marijuana and drug paraphernalia; (7) that Loins was convicted of possession of marijuana; (8) that an anonymous informant reported seeing marijuana in the trailer on numerous occasions; (9) that a Crime-Stopper tip reported marijuana sales at the trailer by Loins and two other individuals and that all three were living at the trailer; (10) that it is common for persons buying drugs to stay only a short time and leave with the drugs on their persons; and (11) that Loins was involved in trading sex for drugs at the trailer.

The *Loins* court concluded that the affidavit in that case contained more information than those supporting all persons search warrants that were upheld in other states. 26 Kan. App. 2d at 628. Based on the information provided to the magistrate and giving appropriate deference to the magistrate's decision to issue a warrant, the *Loins* court concluded that there was probable cause to believe that the primary activity at the trailer was drug sales and consumption and that all those present would be involved in the illegal activity. As a result, the *Loins* court held that the trial court properly denied Loins' motion to suppress the marijuana found in his pocket. 26 Kan. App. 2d at 628.

Unlike the affidavit addressed in *Loins*, the affidavit in the instant case failed to set forth facts regarding whether the primary activity at Watters' residence was the sale of drugs and whether all persons present would be involved in illegal activities. Instead, the affidavit stated the following facts: (1) that the premises to be searched was Watters' residence; (2) that Watters had been previously convicted of possession of drugs; (3) that a confidential informant knew Watters and knew that he sold drugs at his house; and (4) that 5 days before the execution of the search warrant the same confidential informant purchased drugs through a controlled buy at the residence.

The State attempts to extend this list by noting that the warrant included the following: (1) that the officer was well trained and highly experienced; (2) that the utilities, driver's license, and vehicle registration records placed Watters at the residence to be searched; (3) that the items to be seized were limited in scope and clearly identified; (4) that the persons to be searched, including any other persons present, were identified by name or by their immediate and physical nexus to the suspected illegal activity; (5) that in the officer's experience it is common for users to visit a dealer's residence to purchase drugs and to conceal those drugs on their persons; and (6) that it is practically impossible to predict who is likely to be present at the residence at any given time. However, the facts cited by the State do not indicate whether the sole or primary activity at Watters' residence was the sale of drugs or whether everyone present would be involved in illegal activity.

The affidavit at issue in the instant case is similar to the one addressed in *Horn*. In that case, police obtained a warrant to search a house for drugs and drug-related items and to search all persons present. Horn was at the house when police executed the warrant, and cocaine and a large amount of cash were found in his jacket pockets. The trial court denied Horn's motion to suppress the evidence on the grounds that exigent circumstances justified the search. The *Horn* court noted that the affidavit supporting the all persons present warrant failed to state that the visitors to the residence were known to be involved in drug trafficking. 15 Kan. App. 2d at 367. Instead, the affidavit merely provided (1) that one con-

trolled buy was consummated on the premises; (2) that during the controlled buy, persons left the house for unknown reasons before the sale was completed; and (3) that police observed persons leaving the house for the legal purpose of purchasing liquor. *Horn* concluded that "[t]he facts in the affidavit are simply insufficient to infer that the sole or primary activity at the residence was the sale of drugs and that everyone present would be involved in illegal activity. Accordingly, the search warrant was invalid as to its authorization to search 'the person of all persons on said premises.' [Citation omitted.]" 15 Kan. App. 2d at 367.

In granting the motions to suppress the evidence, the trial court in the instant case relied on the fact that the affidavit supporting the all persons warrant failed to state that there was regular traffic to and from Watters' residence. The State argues that the trial court's reliance on this single prong is not supported by *Loins*, nor by a review of the decisions cited by that court. The State points out that there is no rigid requirement that a specified list of factors must be met for an all persons warrant to issue. Instead, probable cause to support a warrant authorizing the search of all persons present is to be determined according to the totality of the circumstances.

Probable cause is not a legalistic and technical determination applying rigid prongs which must be satisfied, but a practical, common-sense determination, taking into account the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 236-37, 76 L. Ed. 2d 527 103 S. Ct. 2317 (1983); *State v. Abu-Isba*, 235 Kan. 851, Syl. ¶ 2, 685 P.2d 856 (1984).

Here, the totality of the circumstances did not establish probable cause that the primary activity at Watters' residence was the sale of drugs and that visitors at the residence would be involved in illegal activity. The affidavit failed to address who had visited Watters' residence, how often others visited, how long the visitors stayed, or the relationship of the confidential informant to Watters. Moreover, there were no facts concerning regular traffic of persons entering and leaving for the purpose of using or purchasing drugs. No surveillance of the house or interviews of the neighbors were conducted to address these missing facts.

An Iowa court reviewing an all persons warrant made a similar observation regarding the lack of information about visitors to a house. In *State v. Prior*, 617 N.W.2d 260, 267 (Iowa 2000), the court stated:

"Police did not investigate or conduct surveillance to determine if all persons who went to the apartment were involved in drug transactions, or the amount of time visitors would spend in the apartment, or the time of day of the suspicious activity.

"The officer's attempt to transform the apartment into a drug house through his opinion was contradicted by other information. The apartment was identified as a residence and the trash revealed mail was delivered at the apartment. Thus, contrary to the premise of the officer's opinion, the apartment was not a place in which no person maintained a legal connection. We agree with the line of cases which recognize the likelihood of innocent persons being present in a residence, regardless of the existence of illegal activity on the premises. [Citations omitted.]"

In setting out a standard for determining if an all persons warrant is supported by probable cause, the *Prior* court noted that "the magistrate must be told how many people frequent the place, when they come and leave, and what they appear to be doing. Another important factor is whether anyone who seems to have no connection with the illegal conduct is ever seen there. If such a showing is not made, the warrant will be struck down." 617 N.W.2d at 265.

The affidavit in the instant case failed to include any facts as to anyone except Watters or the confidential informant. As a result, the issuing magistrate did not have a substantial basis for concluding probable cause existed that the primary activity at Watters' residence was drug sales and that all visitors at the residence were involved in the illegal activity. The trial court properly granted Jackson's and Hackler's motions to suppress.

Next, the State argues that if this court finds that there is not a substantial basis for concluding that probable cause supported the all persons warrant, the evidence seized under the warrant is nevertheless admissible under the good faith exception to the exclusionary rule.

The trial court found that the good faith exception was not applicable because the minimum probable cause test from *State v. Doile*, 244 Kan. 493, 769 P.2d 666 (1989), *abrogated on other grounds by Horton v. California*, 496 U.S. 128, 110 L. Ed. 2d 112,

110 S. Ct. 2301 (1990), was not satisfied. Specifically, the trial court found that the affidavit for the search warrant did not contain facts of traffic to and from Watters' residence from which a determination of probable cause could be made to support a search· of all persons present at the residence.

Evidence seized under a warrant should only be suppressed "on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *United States v. Leon*, 468 U.S. 897, 918, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). This principle is referred to as the good faith exception to the exclusionary rule and was adopted by our Supreme Court in *Doile*, 244 Kan. at 501-03. See *State v. Probst*, 247 Kan. 196, 203-05, 795 P.2d 393 (1990).

The good faith exception in *Leon* provides that evidence should not be excluded unless (1) the magistrate who issued the warrant was deliberately misled by false information; (2) the magistrate completely abandoned his or her neutral and detached role; (3) the warrant is so lacking in specificity that the officers cannot determine the place of the search or the items to be seized; or (4) the warrant bears so little indicia of probable cause that it is entirely unreasonable for an officer to believe that the warrant is valid. 468 U.S. at 923. If none of the four circumstances exist and if an officer acts in good faith, then the evidence should be admitted. 468 U.S. at 922-23.

None of the four above situations requiring exclusion applies in this case. The affidavit contained no false or misleading statements. No pertinent information was withheld from the affidavit. There is no evidence that the issuing judge wholly abandoned his neutral and detached role. The warrant was not lacking in specificity. There are no circumstances where it was unreasonable for the officer executing the warrant not to override the determination of probable cause found by the issuing judge and refuse to execute the warrant. There simply was no bad faith or wrongdoing shown in the issuance or execution of the warrant. This determination would normally end the inquiry and the evidence would be admissible under the good faith exception. *Doile*, 244 Kan. at 502.

However, in *Doile*, the court quoted the following language from *Leon*, as evidence of a minimum probable cause requirement:

" '[R]eviewing courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. at 239. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." [Citations omitted.] Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances, [Citation omitted] or because the form of the warrant was improper in some respect.' 468 U.S. at 915." 244 Kan. at 502.

This language was later quoted by the *Probst* court as evidence that *Leon* "did not totally abandon the requirement of probable cause and stated the affidavit must contain a substantial basis indicating probable cause." 247 Kan. at 204.

The *Doile* court held that the trial court erred in refusing to grant a motion to suppress because the minimum probable cause requirement was not satisfied. The court stated:

"The affidavit herein does not contain any factual allegations from which the judge could have found there was probable cause to believe contraband [would be found on the premises subject to the search warrant]. . . . The judge must have concluded that finding the small amount of drugs on the defendant's person and in his auto was probable cause to search his residence simply because of the old conviction. This is an 'improper analysis of the totality of the circumstances' within the purview of *Leon*, and we, as a reviewing court, need not defer to the issuing judge's determination." 244 Kan. at 503.

Our Supreme Court reiterated this principle in *State v. Longbine*, 257 Kan. 713, 721-22, 896 P.2d 367 (1995), when it stated:

"If the affidavit supporting the search warrant does not provide an indicia of probable cause to conclude that contraband would be found at defendant's residence, it is constitutionally and statutorily defective, and the good faith doctrine does not apply. *Leon*'s good faith exception does not apply to a warrant, such as the one here, that does not provide the magistrate with a substantial basis for determining that probable cause existed that drugs would be found in defendant's residence."

Clearly, it is the position of our Supreme Court that an improper analysis of probable cause by the issuing judge will suffice to employ the exclusionary rule, even if an officer reasonably relies upon the search warrant.

*Doile,* however, has been criticized for relying on *Leon* as evidence of a minimum probable cause requirement on grounds that *Leon* does not require automatic suppression of evidence. In addition, the minimum probable cause requirement has been faulted for targeting judicial misconduct rather than police conduct, which was the Court's focus in *Leon.* See Comment, *The Good Faith Exception to the Exclusionary Rule: An Analysis of Kansas Law,* 41 Kan. L. Rev. 95, 108-10, 115-16 (Crim. Proc. ed. 1993).

The State argues that *Doile* was wrongly decided because although the case purports to apply *Leon,* it distorts and misreads the decision as creating a minimum probable cause requirement. Although *Leon* may not have established a minimum probable cause requirement, it is clear that our Supreme Court has established such a requirement. We are duty bound to follow our Supreme Court precedent absent some indication that the court is departing from its previous position. *Gadberry v. R.L. Polk & Co.,* 25 Kan. App. 2d 800, 808, 975 P.2d 807 (1998). Because our Supreme Court has not indicated that it is departing from its previous application of the minimum probable cause requirement, we must follow *Doile.*

*Leon's* good faith exception is not applicable under the facts of this case because the affidavit failed to furnish the issuing judge with a substantial basis for determining that probable cause existed that the primary activity at Watters' residence was the sale of drugs and that all persons present at the residence would be involved in illegal activity. Because the minimum probable cause test was not satisfied, the trial court properly suppressed the evidence found as a result of the all persons present clause of the search warrant.

Next, the State argues that the trial court failed to show the proper deference to the probable cause determination of the magistrate who issued the warrant and the trial court applied an inappropriate standard of review. As noted previously, when reviewing the validity of a search warrant, this court must determine

whether the magistrate had a substantial basis for issuing it. The probable cause determination of the magistrate who issued the warrant is given great deference. *State v. Gilbert*, 256 Kan. 419, Syl. ¶ 4, 886 P.2d 365 (1994). The *Gilbert* court further held that "such after-the-fact scrutinizing should not take the form of a de novo review." 256 Kan. 419, Syl. ¶ 4. It is not for a reviewing court, whether the district court or an appellate court, to substitute its judgment for that of the magistrate who issued the warrant. 256 Kan. at 421-22.

The State argues that in granting the motion to suppress, Judge Hart was not deferential to the decision to issue the warrant and instead reviewed the issue de novo. The State claims that the record lacks any evidence of a determination by Judge Hart that the judge who issued the warrant (also Judge Hart) lacked a substantial basis to conclude that probable cause existed. The State claims that if there was a substantial basis for concluding that probable cause existed, Judge Hart should have deferred to the judgment of the judge who issued the warrant (himself) and upheld the warrant, just as if another judge had issued it. But see *Probst*, 247 Kan. at 205; *Doile*, 244 Kan. at 503.

In deciding whether a substantial basis supports a probable cause determination, "what the district court found or did not find should not be the basis for the Court of Appeals' review." *Gilbert*, 256 Kan. at 422. Instead, this court addresses whether the magistrate had a substantial basis for concluding that probable cause existed and, in so doing, will pay great deference to the magistrate's determination. 256 Kan. at 422. Although the trial court may have failed to pay great deference to the issuing judge's determination, we find that the trial court properly determined that the issuing judge lacked substantial basis for finding probable cause existed that all persons present at Watters' residence would be involved in an illegal activity.

Affirmed.