(118 P.3d 692)
No. 92,018

STATE OF KANSAS, *Appellee,* v. RUSSELL A. POTTS, *Appellant.*

Opinion filed September 2, 2005.

*Patrick H. Dunn,* assistant appellate defender, for appellant.

*Matt J. Maloney,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., PIERRON and HILL, JJ.

MARQUARDT, J.: Russell A. Potts appeals his convictions for one count of rape, one count of aggravated criminal sodomy, one count of criminal threat, and two counts of domestic battery. We affirm in part and reverse in part.

In December 2000, Potts and V.H. started living together in V.H.'s home. Potts and V.H. had complicated romantic histories; Potts was still friendly with the mother of his children, and V.H. had two ex-husbands who cycled in and out of her life.

*December 17, 2001*

On December 17, 2001, V.H. described the atmosphere in the home as unhappy, with a "whole lot of fighting" and concerns about money. According to V.H., she and Potts got into an argument

wherein Potts grabbed her purse strap and pulled her into a wall to stop her from leaving. V.H. testified that her shoulder and back were injured and her arms were bruised. V.H. also claimed that Potts pushed her into the bedroom and held her down on the bed. V.H. later reported the incident to the police. Potts denied that there was an argument or physical altercation.

*December 30, 2001*

V.H. spoke to a police officer on December 29, 2001, about the violence in her home. V.H. learned about how she could obtain a protection from abuse (PFA) order. However, before that could happen, another incident occurred.

On December 28, 2001, Potts' birthday, he took V.H.'s car and celebrated with his son. Potts had not returned by the following afternoon, so V.H. had someone drive her to Potts' ex-wife's home, where she found her car. V.H. returned home, changed the locks, and put Potts' clothing outside in another vehicle. V.H. testified that early the next morning, Potts came home, kicked in the back door, and yelled about being locked out of his house. According to V.H., Potts removed a gun from a closet and waved it around while he yelled at V.H. V.H.'s friend called the police; however, no charges were filed.

Potts admitted that he took V.H.'s car and spent the night at his ex-wife's home. When Potts found the car missing the next morning, he assumed it had been stolen. Potts eventually returned to V.H.'s house and found that his key would not work. Potts admitted that he kicked in the door and handled a gun but denied that any of his actions were done with malicious intent.

*May 2002 Incident*

V.H. broke up with Potts and moved out of her home in January 2002. By the end of January 2002, V.H. and Potts rekindled their relationship, and Potts frequently stayed at V.H.'s home. In mid-May, Potts accused V.H. of being with another man. V.H. testified that he pushed her against the wall and hurt her shoulder. V.H. also claimed that when Potts pushed her on the floor and forcibly tried to remove her underwear, he injured her knee.

A few weeks later, V.H. went to Potts' place of business and asked for her house key. V.H. testified that the next morning, Potts tried to kick in her front door. When he was unsuccessful, he pulled out the phone wires while V.H. was calling 911. Potts then pushed in her air conditioning unit and climbed in through the bedroom window. On the advice of law enforcement authorities, V.H. filed for a PFA order but never followed through with it. Potts called and apologized, so V.H. thought that things would get better.

Potts denied the mid-May fight, explaining that V.H. hurt her leg when she tripped over a bed frame. Potts denied pushing in V.H.'s air conditioner. He said that the unit was not bolted and fell through the window due to the pressure of his weight. Potts also claimed that he accidentally disabled the phone line when he stood on it.

## June 2003 Incident

By March 2003, V.H.'s relationship with Potts was quite bad. V.H. claimed that Potts refused to leave and continued to want sex even if she initially refused. On June 21, 2003, V.H. was awakened by Potts shortly after midnight when he was attempting to initiate sex. She refused.

V.H. testified that Potts hit her twice in the face with a pair of jeans and injured her eye. Potts then grabbed V.H. by her arms, pulled her off the bed, and tore her shirt. V.H. testified that Potts yelled at her and pounded on the walls. Potts had said, "I could shoot you now, and I wouldn't give a shit . . . I'm over the edge; I just don't give a fuck; I could kill you right now and not give a fuck."

V.H. testified that Potts grabbed her hair, forced her to the floor, and picked her up in an attempt to throw her out of the house. When that failed, Potts moved V.H. back to the bedroom, where he put her on the bed and again asked her if she wanted to die. V.H. testified that Potts demanded oral sex, grabbed her head, and forced it towards his penis. V.H. was crying and coughing. She went to the bathroom and vomited. When V.H. returned to the bedroom, Potts again forced her to perform oral sex against her will. After a couple of minutes, Potts told V.H. to stop, and he initiated

intercourse. V.H. testified that she did not fight back because Potts was too strong and she was scared.

Potts denied all of V.H.'s allegations. According to Potts, V.H. woke when he entered the bedroom. Potts claimed that V.H. went into the bathroom and then came back with allergy medication and anti-inflammatory drugs. Potts testified that he attempted to grab the medication out of her hands, bruising her arms because he thought she was trying to commit suicide. Potts testified that V.H. initiated both oral and vaginal sex, wanting to show Potts that she could please him.

V.H. went to the police, and Potts was arrested. Potts was charged with one count of domestic battery, one count of criminal threat, one count of aggravated criminal sodomy, and one count of rape for the events of June 21, 2003; one count of domestic battery for the May 2002 incident; and one count of domestic battery for the December 2001 incident. A jury convicted Potts on all charges except for the domestic battery charge involving the December 2001 incident. Potts received a controlling sentence of 331 months' imprisonment. He timely appeals his convictions and sentence.

### Admissibility of Evidence

V.H. was formerly married to Steve Morton, whom she described as an addict, and testified that after they divorced, he became abusive. Morton allegedly broke into V.H.'s home and stole things from her; one such burglary resulted in him serving jail time. Morton was angry about the conviction, and he was physically violent toward V.H. V.H. also suspected that Morton was stalking her.

In addition to what V.H. admitted at trial, Potts claimed that V.H. was raped by Morton. Potts wanted to inform the jury about Morton's rape on the theory that V.H.'s state of mind was relevant to her relationship with Potts. Potts argued that this rape was not "sexual conduct" as contemplated by the rape shield statute; therefore, the rape shield statute did not apply.

The trial court ruled that evidence of a rape of the victim by someone other than the defendant is protected sexual conduct under the rape shield statute. Potts was trying to prove V.H.'s "pro-

clivity for sex." The trial court noted that Potts never formally filed a rape shield motion pursuant to K.S.A. 21-3525(b), or an affidavit as to why the evidence should be admitted. That statute requires a written motion before the trial court can consider such evidence of a rape.

On appeal, Potts continues to argue that "sexual conduct" is not covered under the rape shield statute. We hold that evidence of a rape by someone other than the defendant is covered by the phrase "sexual conduct" in the rape shield statute. See *Com. v. Johnson,* 389 Pa. Super. 184, 191, 566 A.2d 1197 (1989).

Potts claims that the trial court abused its discretion by failing to admit the prior rape evidence. The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. *State v. Jenkins,* 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

Potts was allowed to introduce evidence of V.H.'s mental state during the time leading up to Potts' arrest. During cross-examination, V.H. admitted that Morton was abusive.

We do not see any abuse of discretion in the trial court's decision to disallow testimony about the alleged rape of V.H. by another individual.

### *Jury Instruction*

The State charged Potts with one count of criminal threat. At the end of the trial, the jury was instructed: "Under this instruction, a statement that defendant has already committed violence is the same as a threat to commit violence." Potts did not object to the wording of the instruction.

On appeal, Potts argues that the language of the instruction removed from the jury a factual determination and created a mandatory presumption that any and all statements made by Potts were threats. Potts maintains that this conclusive mandatory presumption was reversible error because it relieved the State of its burden of proof.

When a party does not challenge an instruction prior to its delivery to the jury, this court reviews an instruction by a clearly

erroneous standard. *State v. Pabst*, 273 Kan. 658, 660, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002). Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003).

The instruction was the optional language of PIK Crim. 3d 56.23 and is to be used when the defendant communicated a statement of past conduct rather than a threat of future conduct. The element portions of the instruction informed the jury that it must find Potts threatened to commit violence and he communicated it with intent or reckless disregard of V.H.

Potts is correct when he asserts that a trial court errs when it instructs the jury that as a matter of law, an element of the offense charged has been established by the evidence. Such instructions invade the province of the jury as the factfinder and violate the defendant's Fifth and Sixth Amendment rights to have the jury determine guilt or innocence. *State v. Brice*, 276 Kan. 758, Syl. ¶ 2, 80 P.3d 1113 (2003).

In the instant case, the jury was not told that an element of the offense had been established. Nothing in the language of the instruction usurped the jury's right to make factual findings or weigh the credibility of the witnesses. The disputed language in the jury instruction was merely a definitional statement meant to inform the jury on the exact scope of the word "threat" and was not clearly erroneous.

### *Multiplicity*

The majority of Potts' charges resulted from the June 2003 incident at V.H.'s home which included domestic battery, criminal threat, rape, and aggravated criminal sodomy. On appeal, Potts argues that these charges were multiplicitious and violated the Double Jeopardy Clauses of the Kansas and United States Constitutions. Potts contends that since V.H. never overtly objected to either the vaginal or oral sex, the "force" element of the sex crimes must have come from Potts' movement of V.H. through her home, which was also the basis of the domestic battery complaint. He also

maintains that the "fear" element was proved by V.H.'s reaction to Potts' threats, which was the basis of the criminal threat charge. Potts believes that his actions were part of a single chain of violence and cannot be separated to produce separate crimes.

Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. Our standard of review on questions of multiplicity is plenary. See *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998).

Under Kansas law, crimes are multiplicitious if: (1) the crimes merge, that is, they constitute a single wrongful act, or the same evidence is required to prove both crimes, but if each offense requires proof of a fact not required in proving the other, the offenses do not merge; and (2) one offense is an included offense of the other as provided in K.S.A. 2004 Supp. 21-3107(2). *State v. Garcia*, 272 Kan. 140, 145, 32 P.3d 188 (2001).

K.S.A. 2004 Supp. 21-3107(2) reads:

"Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

"(a) A lesser degree of the same crime;

"(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;

"(c) an attempt to commit the crime charged; or

"(d) an attempt to commit a crime defined under subsection (2)(a) or (2)(b)."

The crimes of rape and aggravated criminal sodomy contain elements where the victim was overcome by "force or fear." See K.S.A. 2004 Supp. 21-3502(a)(1)(A) and K.S.A. 21-3506(a)(3)(A). In the complaint, Potts was accused of committing his acts while V.H. "was overcome by force or fear." During closing argument, the prosecutor told the jury that V.H.'s "will was overcome by force or by fear because of what [Potts] did to her . . . [t]his was sex, both oral and vaginal, without consent while overcome by force or by fear." Rape and criminal sodomy are not multiplicitous.

The State advanced an alternative means theory for conviction. In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternative means. In reviewing an alternative means case, the court must determine whether a rational trier of fact could have found each means of committing the crime proved beyond a reasonable doubt. *State v. Morton*, 277 Kan. 575, 580, 86 P.3d 535 (2004). Thus, in this case, Potts could be convicted if the State proved that V.H. was overcome by either force or fear. Violent assaults and life-threatening actions are not necessary to sustain a "force or fear" rape conviction. In order to determine whether a rational factfinder could have found beyond a reasonable doubt that a victim of rape has been overcome by force or fear, we consider the record as a whole. *State v. Borthwick*, 255 Kan. 899, 910-11, 880 P.2d 1261 (1994).

The question we must answer is whether the evidence that the State used to prove force or fear was also used to sustain independent convictions for domestic battery and criminal threat. The record on appeal shows that on the night in question, Potts grabbed V.H. by the arm and attempted to throw her out of the house. Potts acknowledges that this behavior could be used to show force. V.H. testified that Potts made a number of threatening comments. Potts acknowledges that this evidence could be used to prove the fear element.

The problem with this is that Potts contends this force and fear evidence was also used to provide the factual basis for Potts' domestic battery and criminal threat convictions. The State seemed to acknowledge this during closing argument, as the prosecutor referenced Potts' threats when presenting its case for force or fear. We must then examine the record on appeal to determine if there is any independent evidence of either force or fear.

Domestic battery is defined by K.S.A. 2004 Supp. 21-3412a. Domestic battery occurs when one intentionally causes bodily harm against a family or household member. K.S.A. 2004 Supp. 21-3412a(a)(1). The bodily harm which can sustain a conviction for

simple battery may be slight, trivial, minor, moderate, or mere bruising. *State v. Moore*, 271 Kan. 416, 419, 23 P.3d 815 (2001). V.H. testified that at the start of this incident, Potts hit her twice in the face with a pair of pants and injured her eye. The act of hitting V.H. seems to be pure battery, without any element of force. Therefore, we believe there was independent evidence, apart from Potts' movement of V.H. through the house, to sustain Potts' conviction for domestic battery.

We next turn to the question of Potts' conviction for criminal threat. At trial, the prosecutor asked V.H. if she consented to oral sex with Potts. V.H. said that she did not consent, but she did it anyway because she had learned that it was "better to let him have what he wants than to tell him no." V.H. also said that she did not consent to sexual intercourse with Potts, but she did not resist him because he "was too strong, and I was too scared to fight against him."

V.H. admitted that she did not stop Potts from removing her underwear and she never told him "no." V.H. also admitted that at the time of the rape, Potts was not hitting her. Most importantly for our inquiry here, V.H. testified that she submitted to the rape because Potts threatened to kill her.

After thoroughly reviewing the record on appeal, we believe that Potts is correct. There can be no doubt there was plenty of evidence that V.H. was put in fear; her life was threatened. However, this appears to be exactly the same evidence that was used to sustain Potts' conviction for criminal threat; the State admitted it during closing argument. Potts' conviction for criminal threat is multiplicitious with his convictions for either rape or aggravated criminal sodomy. Therefore, the conviction for criminal threat is reversed. Neither Potts' sentence, nor his criminal history score, is affected by this reversal of the conviction.

At sentencing, Potts challenged his criminal history, claiming that he had only one prior conviction. The State presented a journal entry of judgment showing that Potts was convicted of an additional count of forgery. The trial court relied on the journal entry when finding that Potts had two prior convictions for forgery.

On appeal, Potts argues that the State may not use evidentiary presumptions that have the effect of relieving the State of its burden of proving every element of a crime beyond a reasonable doubt. Potts acknowledges that this issue was adversely decided in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), but argues that *Ivory* was wrongly decided.

As *Ivory* noted, it has already been determined that prior convictions need not be treated as essential elements of a crime to be presented in an indictment and decided by a jury. 273 Kan. at 47. This Supreme Court precedent still stands today. This court is duty bound to follow Kansas Supreme Court precedent, unless there is some indication that the court is departing from its previous position. *State v. Jackson*, 30 Kan. App. 2d 288, 299, 41 P.3d 871 (2002). Seeing no departure, we must reject Potts' argument.

Affirmed in part and reversed in part.